## In re Free and Clear Sale Conducted November 19, 1998 SALE NO. 10, Deed No. 23198.

## Richard Popkin, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.
Decided July 2, 2002.

___

Lewis W. Wetzel, Wilkes–Barre, for appellant.

Christopher B. Slusser, Sugarloaf, for appellee.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, and Judge FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Richard Popkin (Lienholder) appeals from a decision of the Court of Common Pleas of Luzerne County (trial court) which denied his Motion to Void the Judicial Tax Sale [1] of a piece of property on which he holds a lien. We vacate the order of the trial court and remand this case for the purpose set forth below.

On August 5, 1997 an Upset Tax Sale was conducted by the Luzerne County Tax Claims Bureau (Tax Bureau) on a piece of property owned by Fli–Lang Realty, Inc. for past due real estate taxes. [2] Because the upset price was not bid, the Tax Bureau petitioned the trial court for permission to conduct a Judicial Tax Sale. The trial court granted the petition and, in accordance with Section 611 of the Pennsylvania Real Estate Tax Sale Law (Tax Sale Law), [3] the Tax Bureau attempted to notify Lienholder by certified mail. However, the Tax Bureau was unsuccessful because the mail was returned as unclaimed. Therefore, the Judicial Tax Sale was conducted on November 19, 1998 and the property was sold to Alfred J. Bonk, Jr. (Appellee) for $8,300.00. On December 20, 2000, Lienholder filed a Motion to Void Tax Sale with the trial court asserting that he has a $517,465.00 lien on the property. In addition to administrative fees and expenses, Lienholder asserted that he is owed a total of $707,482.00. Lienholder also asserted that he has commenced a

---

1. Judicial Tax Sales are often referred to as "free and clear sales" because the property is sold "free and clear" from all liens, mortgages, etc. For this opinion, however, we will use the term "Judicial Tax Sale."

2. As opposed to a Judicial Tax Sale, a person who buys property at an Upset Tax Sale takes it subject to certain liens.

3. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

proceeding to revive and continue the lien. Lienholder alleges that he was not served with proper notice of the tax sale and that, for this reason, he is entitled to have his lien revived. The Tax Bureau and Appellee filed Answers asserting that the sale was conducted in accordance with the Tax Sale Law.

At the hearing, Lienholder, Appellee and the Tax Bureau testified and presented evidence. Mary Augello, who is the Executive Director of the Tax Bureau, testified that the Luzerne County Sheriff's office attempted to notify Lienholder at his last known address about the Judicial Tax Sale on three occasions by certified mail, but that the mail was returned as unclaimed (N.T. 5/21/01, p. 6). Lienholder testified that he hasn't lived at the address to which the Sheriff's office sent the mail since 1992. Lienholder's attorney stated that he knew where Lienholder was and could have contacted him. However, he did not find out about the Judicial Tax Sale until six or eight months after it occurred. On cross-examination, Ms. Augello also testified that a judgment filed with the Tax Bureau listed Lienholder's attorney. However, the Tax Bureau did not contact Lienholder's attorney because, as Ms. Augello stated, "It's not required by law that we notify the lawyers." (N.T. 5/21/2001, p. 11). Appellees also testified, stating that they have made over $41,000.00 worth of improvements on the property since they bought it at the Judicial Tax Sale.

The trial court denied Lienholder's Motion, and Lienholder appealed to this Court. Thereafter, in accordance with Pa. R.A.P.1925(a), the trial court issued an opinion in support of its decision. The trial court explained that Lienholder contended that the more stringent notice requirements of Section 607a, which is located in the Upset Tax Sale section, should be applied to this case. However, the trial court found that because a Judicial Tax Sale took place in accordance with Sections 610–612 and because the notice provisions relating to Judicial Tax Sales were followed by the Tax Bureau, the sale of the property was conducted properly. In support of its decision, the trial court cited our decision in *In Re Serfass*, 651 A.2d 677 (Pa.Cmwlth.1994). Accordingly, the trial court denied Lienholder's Motion.

■ "Our scope of review in tax sale cases is limited to a determination of whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law." *In re Serfass*, 651 A.2d at 678.

When a property owner is delinquent in paying taxes, an Upset Tax Sale is conducted pursuant to Sections 601–609 Tax Sale Law. An Upset Tax Sale, which is explained below, falls within the general definition of a "tax sale," which is any sale at which a property is sold because the owner is delinquent in paying taxes. Before the Upset Tax Sale is conducted, notice must be published in a newspaper and "shall be addressed to the 'owners of properties described in this notice and to all persons having liens, judgments or municipal or other claims against such properties.' " Section 602(d). Additionally, the owner must be notified by certified mail. Section 602(2). The lienholder(s), if any, are not required to be notified by mail of an Upset Tax Sale because a person who buys a property at an Upset Tax Sale takes the property "*subject to* the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price ...". Section 609 (emphasis added). Section 607a, which is located in the Upset Tax Sale section of the Tax Sale Law and which was added by the Legislature in 1986, also provides additional notification

requirements.[4] Most notable is the requirement that the tax bureau use "reasonable efforts" to discover persons whose property interests are likely to be affected by an impeding "tax sale:"

(a) When **any notification of a pending *tax sale* or a tax sale subject to court confirmation** is required to be mailed to any owner, mortgagee, **lienholder** or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, **before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.** The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be

placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

(b) The notification efforts required by subsection (a) shall be **in addition to any other notice requirements** imposed by this act.

72 P.S. § 5860.607a (a) and (b) (emphasis added). If the *upset price* is not bid at the Upset Tax Sale, only then may a Judicial Tax Sale be conducted pursuant to Sections 610–612 of the Tax Sale Law.[5] In fact, a Judicial Tax Sale is never performed first because an attempt at an Upset Tax Sale is a prerequisite to a Judicial Tax Sale. This latter sale is called a Judicial Tax Sale because the tax bureau must petition the trial court for permission to sell the property "free can clear" of all liens. Section 610. *See also Murphy v. Monroe County Tax Claim Bureau*, 784 A.2d 878, 881 (Pa.Cmwlth.2001). Thus, although Upset Tax Sales and Judicial Tax Sales are distinct, both are "tax sales" because they each involve the sale of property for delinquent taxes.

The notification provisions for a Judicial Tax Sale, however, are different from those for an Upset Tax Sale and are set forth in Sections 610 and 611 of the Tax Sale Law:

§ 5860.610. Petition for judicial sale

**In cases where the upset price shall not be bid at any such sale, the sale shall be continued ... the court shall**

---

4. The headings "Upset Sale" and "Judicial Sale" were also added by the 1986 amendments.

5. The upset price is "the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment due on such property and interest on the judgment to

the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished to the bureau by tax collectors, receivers of taxes and taxing districts, (e) the amount of the municipal claims against the property, and (f) the record costs and costs of sale ..." Section 605.

grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective tax and municipal claims, **liens,** mortgages, charges and estates, except separately taxed ground rents.

§ 5860.611. Service of rule

Service of the rule shall be made in the same manner as **writs of scire facias** are served in this Commonwealth. When service cannot be made in the county where the rule was granted, the sheriff of the county shall deputize the sheriff of any other county in this Commonwealth, where service can be made. **If service of the rule cannot be made in this Commonwealth, then the rule shall be served on the person named in the rule by the sheriff, by sending him, by registered mail, return receipt requested,** postage prepaid, at least fifteen (15) days before the return day of the rule, a true and attested copy thereof, addressed to such person's last known post office address. The sheriff shall attach to his return, the return receipts, and **if the person named in the rule has refused to accept the registered mail or cannot be found at his last known address, shall attach evidence thereof.** *This shall constitute sufficient service under this act.*[6]

72 P.S. §§ 5860.610 and 5860.611 (emphasis added).

Unlike an Upset Tax Sale, which is only preliminary to a Judicial Tax Sale for free and clear purposes, at a Judicial Tax Sale the property is sold "free and clear" of tax and municipal claims, liens, mortgages, etc. *See* 72 P.S. § 5860.609.

On appeal to this Court, Lienholder argues that the notice provisions in Section 607a of the Tax Sale Law apply to Judicial Tax Sales. In support of his argument, Lienholder points out that Section 607a states that *"any notification of a pending tax sale* or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, *lienholder* or other person or entity whose property interests are likely to be significantly affected by such tax sale ..."* (emphasis added). Because the notice provision for a Judicial Tax Sale in Section 611 is the only place where notification by mail to a lienholder is mentioned, Lienholder argues that the Legislature must have intended for Section 607a to apply to Judicial Tax Sales as well as Upset Tax Sales.[7] In his brief Lienholder states that in order to conclude that Section 607a does not apply to Judicial Tax Sales, "one must conclude that the same due process afforded an owner in an Upset Tax Sale is not contemplated for a lienholder when he faces divestiture of his property (the lien) in a Free and Clear

---

6. "Scire facias" means literally "you are to make known, show cause." Black's Law Dictionary 1347 (7th ed.1999). "A writ of scire facias is a mandate to the sheriff, which recites the occasion upon which it issues, which directs the sheriff to make known to the parties named in the writ that they must appear before the court on a given day, and which requires the defendant to appear and show cause why the plaintiff should not be permitted to take some step, usually to have advantage of a public record. The object of the writ of scire facias is ordinarily to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the plaintiff should not have execution. The writ of scire facias serves the dual purposes of a summons and a complaint, and a writ of scire facias is personal process, but the detailed requirements of a pleading are not applied to the writ of scire facias." 18 Standard Pennsylvania Practice 2d § 102:10 (1983) (footnotes omitted).

7. Section 611 was enacted in 1947 with the rest of the Tax Sale Law and has not been amended since then.

Judicial Sale!" A "reasonable effort" in this case, Lienholder argues, would have been for the Tax Bureau to contact his attorney who knew where he was and had his current address. Because the Tax Bureau failed to make this "reasonable effort" to notify him of the sale, Lienholder argues that the sale is void.

Appellee argues that Section 607a does not apply to Judicial Tax Sales because: 1) Section 611 sets forth the notice provisions for Judicial Tax Sales and, in particular, states "[t]his shall constitute sufficient service under this act." Because the Tax Bureau complied with these provisions, the Judicial Tax Sale was conducted in complete accordance with the Tax Sale Law, 2) Section 611 sets forth the notice provisions for Judicial Tax Sales and 607a is located in the Upset Tax Sales section. Because it is not located in the same section, Section 607a cannot apply to Judicial Tax Sales, 3) if the Legislature intended for the more stringent notice requirements to apply to Judicial Tax Sales, it would have amended Section 611. Additionally, Appellee states that the trial court correctly relied on our decision in *In re Serfass*.

· In *In re Serfass*, Serfass was delinquent in paying his taxes. The tax bureau sent him two Return and Claim notices by certified mail to his last known address for the purpose of informing him that his taxes were overdue, but they were returned as unclaimed. Therefore, the tax bureau held an Upset Tax Sale, but no bids were received for the property. Thereafter, the tax bureau initiated the process described above to sell the property at a Judicial Tax Sale. The Sheriff's office *was* able to personally serve Serfass with a copy of the Rule to Show Cause. However, Serfass did not appear or respond to the Rule by the return date. Accordingly, the trial court ordered the property to be sold at a Judicial Tax Sale and the property was in

fact sold to new owners. Approximately one month later, Serfass filed a Petition to set aside the Judicial Tax Sale. The trial court denied the Petition, and Serfass appealed to this Court, arguing that the trial court's finding that he had actual knowledge of the *date* of the Judicial Tax Sale was not supported by substantial evidence, that the trial court committed an error of law when it ruled that the tax bureau adequately complied with the statutory notice requirements and that the trial court committed an error of law when it found that his due process rights were not violated.

In determining that the Judicial Tax Sale was conducted properly, we held that:

> ... there is no requirement in the Law that the landowner have actual notice of the *date* of the **judicial sale** itself. **It is sufficient under Section 611 that he be given notice of the Rule to Show Cause** why the property shouldn't be sold by judicial sale under Section 611. ... On the other hand, the notice requirements for a tax or **upset sale** conducted under Sections 601 through 609 of the Law are **more rigorous** than those applicable to a judicial sale. Succinctly stated, **notice of an impending tax sale must be given by publication, by posting the property, and by actual notice by first class mail if possible.**

*In re Serfass*, 651 A.2d at 679–681 (emphasis added). Both Appellee and the trial court rely on *In re Serfass* to support their conclusion that Section 607a does not apply to Judicial Tax Sales. However, *In re Serfass* has only limited applicability to this case. The case *sub judice* involves a lienholder who, unlike an owner, was never notified of the impending Upset Tax Sale or Judicial Tax Sale. Serfass was an owner who *did* receive notice of the Judicial Tax Sale. Serfass contended that he should have been notified of the date of the Judi-

cial Tax Sale, and this Court determined that notice of the date of the sale was not required under the Tax Sale Law. In noting that the notice requirements for Upset Tax Sales are more rigorous than those for Judicial Tax Sales, we were merely referring to the fact that, prior to an Upset Tax Sale, publication of the notice and posting of the property is required by Section 607, whereas prior to a Judicial Tax Sale posting and publication is not required by Section 611. *In re Serfass* does *not* hold that Section 607a does not apply to Judicial Tax Sales, as that was not an issue in that case. However, *In re Serfass* does stand for the proposition that Upset Tax Sales and Judicial Tax Sales are fundamentally different and, in that respect, it is applicable to the case *sub judice*.

Having determined that *In re Serfass* is not dispositive of the issue of whether Section 607a applies to Judicial Tax Sales, we must determine whether the Legislature intended for Section 607a to apply to Judicial Tax Sales. The Statutory Construction Act is helpful in making this determination. In particular, Section 1924 provides that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute **shall not be considered to control** but may be used to aid in the construction thereof." 1 Pa.C.S. § 1924. In addition, Section 1933 provides that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa.C.S. § 1933.

An examination of the reasons for why Section 607a was enacted is also helpful. The case that precipitated the passage of Section 607a was the Pennsylvania Supreme Court's decision in *Tracy v. Chester County Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985), which held that "[t]he collection of taxes ... may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process, as we have stated here, requires at a minimum that an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state." *Id.* at 297, 489 A.2d at 1339. In order to appreciate the holding of *Tracy* and its applicability to this case, an extended citation to that case is appropriate:

The problem of whether a certain type of notice meets due process requirements when property rights may be significantly affected by some impending event was addressed by the United States Supreme Court in the landmark case of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and more recently in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Mennonite Board* the United States Supreme Court set aside a tax sale of property for non payment of taxes because a mortgagee of record was not given notice mailed to the mortgagee's last known address or by personal service of the impending sale. The sale was set aside in spite of the fact that there had been notice of the sale by posting and by publication, pursuant to a tax sale statute. Justice Marshall, writing for a majority of the Court, stated that this decision was based on *Mullane*, in which "the Court held that published notice of an action to settle accounts of a common trust fund was not sufficient to inform beneficiaries

of the trust whose names and addresses were known." *Id.* at 795, 103 S.Ct. at 2709, 77 L.Ed.2d at 185. The thrust of this analysis, as applied to *Mennonite Board,* is that **where the name and address of the party affected are known or ascertainable after *reasonable effort*** to determine them, a party with a legally protected property interest **"is entitled to notice reasonably calculated to apprise him of a pending tax sale."** *Id.* at 792, 103 S.Ct. at 2708, 77 L.Ed.2d at 187. Justice Marshall writes:

> When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane.*

*Id.* In *First Pennsylvania Bank v. Lancaster County Tax Claim Bureau,* 504 Pa. 179, 470 A.2d 938 (1983) we applied the rule of *Mennonite Board,* holding that the notice provisions of the Real Estate Tax Sale Law violated the due process rights of record mortgagees in that the statute did not require personal or mailed notice to record mortgagees. *Id.* at 187–88, 470 A.2d at 942. Most recently in *In Re Upset Sale, Tax Claim Bureau of Berks County,* 505 Pa. 327, 479 A.2d 940 (1984), **we held that the notice provisions of the Real Estate Tax Sale Law violated the due process rights of a judgment creditor whose judgment was publicly recorded, and thus, whose identity, like that of the mortgagee, was *reasonably ascertainable,*** but who received no personal service or mailed notice, where, under Pennsylvania law, a judgment operates as a lien upon all real property of the debtor in the county, **giving the judgment creditor a legally protected property right.** A thread running through all of these cases, beginning with *Mullane,* is the mandate that **under the due process clause a reasonable effort must be made to provide actual notice of an event which may significantly affect a legally protected property interest.** In *Mullane* published notice of an action to settle accounts of a trust fund was relied upon, without notice mailed to individuals or personal service, even though the names and addresses of trust beneficiaries were known. It was unreasonable, in these circumstances, to rely upon published notice. In *Mennonite Board* the name of the mortgagee was on file with the county recorder, and although its address was not on file, the address "could have been ascertained by reasonably diligent efforts." 462 U.S. at 798, n. 4, 103 S.Ct. at 2711, n. 4, 77 L.Ed.2d at 187, n. 4. (Emphasis supplied). Similarly, in the *First Pennsylvania Bank* and *In Re Upset Sale, Tax Claim Bureau of Berks County, supra,* mailed notice of a tax sale or personal service could reasonably have been affected by a check of public mortgage and judgment indexes. The United States Supreme Court took care to note in *Mennonite Board* that **a government body is not required to make "extraordinary efforts" to discover the identity and address of a person whose *property interests*** are likely to be significantly affected by a tax sale, but only reasonable efforts.

*Id.* at 294–296, 489 A.2d at 1337–1338 (emphasis added).

Although the Pennsylvania Supreme Court's decision in *Tracy* changed this area of the law to require reasonable notification efforts, the Legislature nonetheless codified the holding in *Tracy* by enact-

ing Section 607a. Section 607a(a) states that "[w]hen *any notification* of a pending *tax sale* or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, **lienholder** or other person or entity whose **property interests** are likely to be significantly affected by such tax sale ... before the tax sale can be conducted or confirmed, **the bureau must exercise reasonable efforts to discover the whereabouts of such person** or entity and notify him." Section 607a(b) also states that "[t]he notification efforts required by subsection (a) shall be in addition to *any other* **notice requirements imposed by this act."**

██ Appellee insists that the placement of Section 607a in the Upset Tax Sale section and the lack of any "reasonable efforts" requirement in Section 611 shows that Section 607a does not apply to Judicial Tax Sales. We disagree. In *Tracy*, our Supreme Court recognized that when the property interests of *any* person will be affected by a tax sale, the tax bureau is required to make reasonable efforts to notify that person of the tax sale. In the case *sub judice*, Lienholder has a legally protected property interest that was affected by the Judicial Tax Sale. Thus, pursuant to *Tracy*, the Tax Bureau was required to make reasonable efforts to notify him after service of the writ of scire facias was unsuccessful. We do not find it dispositive that 607a is located in the section of the Tax Sale Law entitled "Upset Tax Sales." *See* 1 Pa.C.S. § 1924. The language of Section 607a makes absolutely no distinction between Upset Tax Sales and Judicial Tax Sales. Rather, Section 607a uses the term "tax sale," which encompasses both Upset Tax Sales and Judicial Tax Sales. In fact, Section 607a specifically references notice to lienholders, which only occurs in Judicial Tax Sales. Additionally, Section 607a(b) states that the notice re-

quirements of Section 607a are in addition to any other notice requirements in the Real Estate Law. Certainly, Section 611 falls within the purview of "any other notice requirement" in the Real Estate Law. Furthermore, given that Section 607a was enacted after Section 611 as a result of the *Tracy* decision, it is clear that the Legislature intended for Section 607a to apply to any person whose property interests would be affected by *any* tax sale under the Tax Sale Law. *See* 1 Pa.C.S. § 1933. For the Legislature to have intended differently would not have made any sense because only extending the "reasonable efforts" requirement to owners in Upset Tax Sales and not extending that same protection to lienholders in Judicial Tax Sales would have been in violation of our Supreme Court's holding in *Tracy*.

Because the trial court incorrectly relied on *In re Serfass* for the proposition that Section 607a does not apply to Judicial Tax Sales, it did not make a finding as to whether the Tax Bureau exercised "reasonable efforts" as required by Section 607a in notifying Lienholder of the Judicial Tax Sale. Accordingly, the order of the trial court must be vacated and this case must be remanded for a finding of fact as to this issue and a new decision consistent with this opinion.

### ORDER

AND NOW, July 2, 2002, the order of the Court of Common Pleas of Luzerne County docketed at No. 8226–C of 2000 and dated September 20, 2001 is hereby VACATED and this case is REMANDED in accordance with the foregoing opinion.

Jurisdiction relinquished.