**In re Sale of Real Estate By MONROE COUNTY TAX CLAIM BUREAU.**

**Appeal of: First Niagara Bank, N.A., successor by merger to Harleysville National Bank and Trust Company.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 10, 2014.

Filed April 30, 2014.

Kelly L. Eberle, Perkasie, for appellant.

Mark A. Primrose, Stroudsburg, for appellee.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

First Niagara Bank, N.A. (First Niagara), successor by merger to Harleysville National Bank and Trust Company (Harleysville), appeals from the Order of the Court of Common Pleas of Monroe County (trial court) denying First Niagara's Petition to Vacate and Set Aside Tax Sale (Petition to Set Aside) of property located at 3 Vixen Drive, Kresgeville, Polk Township, Monroe County (Property), which was sold at judicial tax sale on May 2, 2012. First Niagara argues that the Monroe County (County) Tax Claim Bureau (Bureau) did not properly serve First Niagara with notice of the judicial tax sale and, therefore, the sale should be set aside and/or First Niagara's liens should not be discharged. Because we conclude that the Bureau properly served First Niagara with notice of the judicial tax sale, we affirm.

Lisa A. Kelchner and Peter G. Kelchner (Kelchners) owned the Property. (Trial Ct. Op., Findings of Fact (FOF) ¶ 1.) On or about August 4, 2006, the Kelchners executed a mortgage in favor of Harleysville on the Property, which was recorded in the County Office of the Recorder of Deeds in Mortgage Book 2277, page 8604. (FOF ¶ 2.) Harleysville and First Niagara Commercial Bank merged on or about April 9, 2010, forming First Niagara. (FOF ¶ 3.) The Kelchners failed to make their monthly mortgage payments and defaulted on their mortgage, and First Niagara, as Harleysville's successor, began mortgage foreclosure proceedings in the County on or about November 5, 2010. (FOF ¶¶ 4–5.) First Niagara obtained a judgment in its favor on or about February 1, 2012. (FOF ¶ 5.)

The Kelchners also did not pay their property taxes, and the Bureau exposed the Property to a tax upset sale on September 14, 2011. (FOF ¶¶ 6–7.) The Property did not sell and, pursuant to Section 610 of the Real Estate Tax Sale Law [1] (Law), the Bureau filed a petition to sell the Property via judicial tax sale (Petition to Sell) with the trial court on Decem-

---

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.610. Section 610 of the Law provides, in relevant part, that where a property is not sold at an upset tax sale, a tax claim bureau may file a petition with a trial court to sell the unsold property at a judicial tax sale. *Id.* The bureau's petition must be accompanied with evidence that it searched the record and ownership documents of the property and a list of all "tax and municipal claims, liens, mortgages, ground rents, charges and estates against" the property. *Id.* The trial court will then grant a rule upon the interested parties "to appear and show cause why a decree should not be made" to allow the sale of the property free and clear of all of the claims, liens, mortgages, etc. *Id.*

ber 22, 2011.[2] (FOF ¶¶ 8–9.) The trial court issued a rule returnable on the Petition to Sell (Rule), with a hearing date of March 20, 2012. (FOF ¶ 10.) The Petition to Sell and Rule were served upon "First Niagara Bank" at 483 Main Street, Harleysville, Pa. 18438 by a Montgomery County Deputy Sheriff on February 6, 2012.[3] (FOF ¶ 11.) The Sheriff's Return of Service (Sheriff's Return) indicates that the Petition to Sell and Rule were served on "Debra Alwine, Deposit Ops Supervisor." (FOF ¶ 12.) The trial court held a hearing on March 20, 2012, at which First Niagara did not appear, and issued an Order granting the Petition to Sell.[4] (FOF ¶ 13.) Dynasty Custom Homes, Inc. (Purchaser) bought the Property for $40,000 at the May 2, 2012 judicial tax sale. (FOF ¶ 14.)

First Niagara filed the Petition to Set Aside on January 14, 2013. (FOF ¶ 15.) First Niagara argued that it did not have adequate notice of the sale, Alwine was not authorized to receive service and, because First Niagara had received a judgment in the separate foreclosure action in the County, its local counsel should have been served with the Rule. The trial court found that notice was adequate because the Sheriff's Return was conclusive and im-mune from attack by extrinsic evidence and, even if it could be challenged, First Niagara did not provide any evidence, only its attorney's assertion that Alwine was not authorized to receive service on First Niagara's behalf.[5] (Trial Ct. Op. at 5.)

First Niagara appealed, asserting, *inter alia*, that a better search of public records would have revealed to the Bureau the address for First Niagara's local counsel and the certificate of merger between Harleysville and First Niagara Commercial Bank, which would have listed First Niagara's corporate address. The trial court issued a Statement in support of its Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a). The trial court noted that the caption of the foreclosure proceeding against the Kelchners refers to the Harleysville branch's address, which is where the Rule was served on First Niagara and is also the address that appears on the first page of the Kelchners' mortgage. (Trial Ct. 1925(a) Op. at 1–2.) Additionally, the trial court stated that it was unaware of any requirement under the Law for the Bureau to search for a "publically available certificate of merger" and then to

2. At this time, First Niagara had not yet obtained its judgment against the Kelchners in its mortgage foreclosure action.

3. A mortgagee has a legally protected property interest and "is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Mennonite Board of Missions*, 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Petition of Tax Claim Bureau of Westmoreland County*, 149 Pa.Cmwlth. 532, 613 A.2d 634, 638 (1992).

4. After a hearing at which the trial court is satisfied that the Rule to Show Cause has been served on the parties named therein and the facts are correct, the trial court can decree that the property be sold at a future time free of all "tax and municipal claims, mort-gages, liens, charges and estates of whatsoever kind, except ground rents, separately taxed." Section 612 of the Law, 72 P.S. § 5860.612.

5. The trial court also concluded that the tax lien, which ultimately led to the judicial tax sale, was in place when Harleysville and First Niagara Commercial Bank merged and, because an "action or proceeding pending by or against any of the corporations may be prosecuted to judgment as if the merger ... had not taken place," Section 1929(b) of the Corporation Law, 15 Pa.C.S. § 1929(b), the Bureau's service of the Rule at the Harleysville address was binding on First Niagara, which was responsible for all of Harleysville's debts and obligations. (Trial Ct. Op. at 5–7.)

mail the Rule to First Niagara at its corporate office when the Sheriff had already effectuated personal service. (Trial Ct. 1925(a) Op. at 2.) This matter is now ready for our Court's consideration.[6]

On appeal, First Niagara contends that the trial court erred in denying the Petition to Set Aside because: (1) it, and its counsel, did not receive adequate notice of the judicial tax sale because the Bureau did not serve the Rule on First Niagara at its corporate office or on its local counsel; and (2) the Sheriff's Return was inadequate to establish that the Rule was properly served on an authorized agent or employee of First Niagara. Before we address First Niagara's specific arguments, we note that recently this Court addressed, and rejected, nearly identical arguments from First Niagara in an unreported opinion, *In Re: Sale of Real Estate By Monroe County Tax Claim Bureau*, 2014 WL 309595 (Pa.Cmwlth., 623 C.D.2013, filed January 28, 2014) (*First Niagara Bank*). In *First Niagara Bank*, First Niagara challenged the judicial tax sale of another foreclosed property in the County on the basis that, *inter alia*, the Bureau did not properly serve First Niagara at its corporate address and at its local counsel's office, and the sheriff's return was defective for the same reasons First Niagara asserts herein. *Id.*, slip op. at 1, 3, 8. Although unreported opinions are not binding precedent and are only persuasive, 210 Pa.Code § 69.414(a), we find the rationale in *First Niagara Bank* persuasive. Thus, we shall address First Niagara's arguments accordingly.

*1. Adequate notice of the judicial tax sale*

■ Section 611 of the Law governs service of the Rule to Show Cause and states:

> Service of the rule shall be made in the same manner as writs of scire facias are served in this Commonwealth. When service cannot be made in the county where the rule was granted, the sheriff of the county shall deputize the sheriff of any other county in this Commonwealth, where service can be made.... The sheriff shall attach to his return, the return receipts, and if the person named in the rule has refused to accept the registered mail or cannot be found at his last known address, shall attach evidence thereof. This shall constitute sufficient service under this act.

72 P.S. § 5860.611. The notice requirements for judicial tax sales are less onerous than those for upset tax sales, *In re Serfass*, 651 A.2d 677, 679 (Pa.Cmwlth. 1994); however, they must be strictly construed, *Manufacturers and Traders Trust Co. v. Luzerne County Tax Claim Bureau*, 56 A.3d 36, 39 (Pa.Cmwlth.2012). There is no requirement that the landowner have actual notice of the date of the judicial tax sale, all that is required is the notice provided under Section 611 of the Law. *In re Serfass*, 651 A.2d at 679–80.

■ First Niagara argues, without reference to Section 611 of the Law, that Section 607.1(a)[7] and this Court's decision in *In re: Tax Claim Bureau of Beaver*

---

6. "Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Plank v. Monroe County Tax Claim Bureau*, 735 A.2d 178, 181 n. 6 (Pa.Cmwlth.1999). The trial court is the finder of fact and "has exclusive authority to weigh the evidence, make credibility determi-

nations and draw reasonable inferences from the evidence presented." *In re: Sale of Real Estate by Lackawanna County Tax Claim Bureau (Appeal of Yankowski)*, 986 A.2d 213, 216 (Pa.Cmwlth.2009).

7. Added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a).

*County Tax Sale Sept. 10, 1990*, 143 Pa. Cmwlth. 659, 600 A.2d 650 (1991) (*In re Tax Sale Sept. 10, 1990*), required the Bureau to take reasonable steps to discover First Niagara's corporate address, and the address of its local counsel, and to serve the Rule there and not at First Niagara's Harleysville branch. First Niagara further contends that, notwithstanding the existence of the ongoing mortgage foreclosure action against the Property, the Bureau's "reasonable efforts certificate" indicates that its search of the County Prothonotary's office found no listing related to the Property, which demonstrates that the Bureau's search was not reasonable or effective.

Section 607.1(a) of the Law requires that, after an *unsuccessful* attempt to serve a property owner or other party with an interest in a property subject to tax sales, a tax claim bureau must take reasonable steps to discover the whereabouts of that party.[8] This Court has held that Section 607.1(a) applies to both tax upset sales and judicial tax sales. *In re Sale No. 10*, 801 A.2d 1280, 1288 (Pa.Cmwlth.2002). However, both *In re Tax Sale Sept. 10, 1990*,[9] relied upon by First Niagara, and

---

8. Specifically, Section 607.1 provides:

> (a) When any notification of a pending tax sale ... is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.
>
> (b) The notification efforts required by subsection (a) shall be in addition to any other notice requirements imposed by this act.

72 P.S. § 5860.607a.

9. In *In re Tax Sale Sept. 10, 1990*, the tax claim bureau sent three notices of a tax upset sale by certified mail to a property owner, who was in the process of obtaining a divorce and had moved, all of which were returned as undeliverable. *In re: Tax Sale Sept. 10, 1990*, 600 A.2d at 651–52, 654. After learning about the first two notices, the property owner filed petitions for special relief in the court of common pleas' domestic relations division requesting that the property be removed from the tax sale list and identifying her new address in Florida; the petitions were granted. *Id.* at 651–52. Notwithstanding these prior actions, the tax claim bureau sent third and fourth notices of the sale of the property by certified mail and regular mail, respectively, to the property owner's former address and the certified mail was returned as undeliverable. *Id.* at 652. However, because the property owner did not file any petitions to stay the sale or otherwise respond, the tax claim bureau sold the property, and the trial court entered a Decree Nisi authorizing the conveyance of the property to the purchaser. *Id.* The property owner filed exceptions based on a lack of notice of the tax sale, which the trial court denied. *Id.* On appeal, this Court reversed holding that the reasonable effort requirement of Section 607.1(a) requires the tax claim bureau to do more than simply check telephone directories and the records in the office of the recorder of deeds, prothonotary, and county assessment office. *Id.* at 654. We concluded that once the first certified mailing was returned as undeliverable, the tax claim bureau was on notice that the ad-

*In re Sale No. 10*[10] involved the **attempted** service of notices for a tax upset sale and a judicial tax sale, respectively, by **certified mail** that were returned as unclaimed. In both cases, this Court held that the principles of due process required the tax claim bureaus to do more than proceed with the sale after the attempted service was unsuccessful. *In re Sale No. 10*, 801 A.2d at 1288; *In re Tax Sale Sept. 10, 1990*, 600 A.2d at 654.

The present matter is distinguishable from both *In re Tax Sale Sept. 10, 1990* and *In re Sale No. 10* because, here, service was made by the Sheriff and not by certified mail. As we stated in *First Niagara Bank*:

> The sheriff was directed to serve notice on [First Niagara Bank], and the [Sheriff's Return] clearly states that service had, in fact, been properly effectuated. Accordingly, "the mailed notification [**was not**] returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification...." 72 P.S. § 5860.607a(a). Relying upon the [Sheriff's] Return, the ... Bureau could reasonably conclude that service had

been properly made. Thus, because the [Sheriff's] Return revealed that service had been made, Section 607.1(a) of the Law required no more of the ... Bureau.

*First Niagara Bank*, slip op. at 4–5 (third alteration and emphasis in original). In other words, this was not a situation where the **attempt** to serve the Rule was **unsuccessful**, for example, where it was returned as unclaimed or the Sheriff was otherwise unable to serve the Rule. Although First Niagara repeatedly asserts that the Bureau should have done more to ascertain First Niagara's corporate address and that service of the Rule on the Harleysville branch was not reasonable, the Harleysville branch's address was the address on the Kelchners' mortgage documents and on the caption of First Niagara's mortgage action against the Kelchners. (Trial Ct. 1925(a) Op. at 1–2.) Thus, unlike *In re Tax Sale of Sept. 10, 1990*, the Bureau could reasonably conclude that the address to which it sent the Sheriff to serve the Rule was the correct address for First Niagara, which held the mortgage on the Property at the time the Rule was issued and served.

dress it had was not the property owner's correct address, the property owner thereafter provided her new Florida address, and the tax claim bureau, in making additional inquiries, should have found the property owner's address in Florida. *Id.*

10. In *In re Sale No. 10*, the tax claim bureau sent notice of a judicial tax sale to a lienholder by certified mail three times, all of which were returned as unclaimed. *In re Sale No. 10*, 801 A.2d at 1281–82. The tax claim bureau sold the property at a judicial tax sale free and clear of the lienholder's lien pursuant to Section 612 of the Law. *Id.* at 1281 n. 1, 1282. The lienholder challenged the tax sale and the discharge of his lien, asserting that he was not served with notice of the tax sale because he had not lived at the address to

which the notice was sent for years and the tax claim bureau should have taken reasonable efforts to obtain his new address. *Id.* at 1281–82. The trial court denied the lienholder's challenge, stating that the reasonable efforts requirements of Section 607.1(a) did not apply to judicial tax sales. *Id.* at 1282 (citing *In re Serfass*, 651 A.2d at 678). We reversed on appeal, holding that, because of the need to ensure that persons with interests in property subject to a tax sale have notice of that tax sale, the reasonable efforts requirement set forth in Section 607.1(a) also applied to judicial tax sales and obligated a tax claim bureau to "make reasonable efforts to notify [a person with an interest in a property subject to judicial tax sale] after service of the writ of scire facias [is] unsuccessful." *Id.* at 1288.

■ With respect to First Niagara's claim that the Bureau was obligated to serve its local counsel with the Rule, we addressed the same argument in *First Niagara Bank*, stating:

> [n]othing in Section 611 of the Law, 72 P.S. § 5860.611 (relating to rule service), or Pennsylvania Rule of Civil Procedure No. 424[,] [4] [Pa. R.C.P. No. 424,] requires service of process to be made upon the corporation's counsel of record. Had "significant doubt" been raised as to whether the lienholder had received notice, reasonable efforts under Section 607.1(a) of the Law may have included contacting an attorney of record to aid in serving the lienholder. However, given that the [Sheriff's] Return showed service had been effectuated, such was not the case herein.

[4] Pennsylvania Rule of Civil Procedure No. 424 states:

> Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:
>
> (1) an executive officer, partner or trustee of the corporation or similar entity, or
>
> (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or
>
> (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

*First Niagara Bank*, slip op. at 5. Moreover, while subsection (3) of Rule 424 of the Pennsylvania Rules of Civil Procedure indicates that service of original process may be accomplished by serving an authorized agent of a corporation, which could include an attorney, Rule 424 of the Pennsylvania Rules of Civil Procedure does not require such service to the exclusion of the other approved methods of service.

### 2. The validity of the Sheriff's Return

■ First Niagara next argues that the Sheriff's Return was insufficient to prove that the Rule was properly served because the Sheriff's Return did not specifically identify the person served as an authorized agent or employee of First Niagara. According to First Niagara, it was "not able to identify the individual [the Sheriff] served, and therefore, she was not lawfully able to accept service on [First Niagara's] behalf." (First Niagara's Br. at 16.) First Niagara further contends that the Sheriff's Return was defective and, therefore, open to challenge, because the box was not marked indicating that the person served was the "person-in-charge."

■ A sheriff's return setting forth that original process was served is conclusive and immune from attack as to the facts stated therein of which the sheriff presumptively has personal knowledge. *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1, 3 (1965). "[I]n the absence of fraud, the return of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence[.]" *Id.* If the return is defective or incomplete, extraneous evidence can be used to challenge the return. *Frank P. Miller Paper Co. v. Keystone Coal & Coke Co.*, 267 Pa. 180, 110 A. 79, 80 (1920). Additionally, a sheriff's representation of whether service was made on an agent or person-in-charge can be challenged because most of the facts regarding the nature of the responsibilities of the person served are not within the sheriff's personal knowledge. *Liquid Carbonic Corp. v. Cooper & Reese, Inc.*, 272 Pa.Super. 462, 416 A.2d 549, 551 (1979). In *Liquid Carbonic*, the appellant challenged the sheriff's return, and presented the deposition testimony of the appellant's president and secretary, and the testimony of the deputy sheriff who completed the return, to establish that the

deputy sheriff made no attempt to determine whether the person served was an agent or employee in charge of the appellant's office. *Id.* at 551–52. Accordingly, the Superior Court held that service was not effectuated in accordance with Rule 424 of the Pennsylvania Rules of Civil Procedure. *Id.* at 552.

■ Here, while the Sheriff's Return indicates that it was served on First Niagara, as the mortgagee, at the mortgagee's address and identifies the person served as being a "supervisor," it is not apparent that the deputy sheriff who served the Rule on First Niagara had personal knowledge of Alwine's authority to accept service. Although the Sheriff's Return indicates that Alwine was the "Deposit Ops Supervisor," (FOF ¶ 12), the Sheriff did not check the box that the individual served was a person-in-charge. Thus, First Niagara could have presented evidence challenging the presumptive validity of the Sheriff's Return. However, unlike the appellant in *Liquid Carbonic*, First Niagara did not offer any evidence into the record challenging Alwine's authority to accept service or from the Sheriff to ascertain the circumstances surrounding the Rule's service. Rather, the record contains only First Niagara's counsel's statement, after indicating that First Niagara was not submitting any additional evidence, that the Sheriff's Return "identifies a name with some sort of title scribbled after it, but we're not aware of who this person is. We have no contact with them .... we have no idea who that individual

is." (Hr'g Tr. at 12, 15, 17, R.R. at 62a, 65a, 67a.) "[I]t is well-settled in the law that [an] attorney's statements or questions at trial are not evidence." *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 231 (1995). Thus, as we held in *First Niagara Bank*, because it was First Niagara's "burden to overcome the [Sheriff's] Return's presumptive validity[,] *[s]ee Hollinger* [, 206 A.2d at 3,]" and "First Niagara failed to do so," "we find that the [S]heriff's service on [February 6, 2012] was properly effectuated, and that the trial court did not err when it dismissed First Niagara's Petition [to Set Aside]." *First Niagara Bank*, slip op. at 10.[11]

Because the Bureau served First Niagara with the Rule in accordance with Section 611 of the Law and Rule 424 of the Pennsylvania Rules of Civil Procedure, the trial court did not err in dismissing First Niagara's Petition to Set Aside. Therefore, pursuant to Section 612 of the Law, the Property was sold free and clear of First Niagara's mortgage lien. 72 P.S. § 5860.612.

For the foregoing reasons, we affirm the trial court's Order.

### *ORDER*

**NOW,** April 30, 2014, the Order of the Court of Common Pleas of Monroe County is hereby **AFFIRMED.**

11. Purchaser argues, like the purchaser in *First Niagara Bank*, that First Niagara's Petition to Set Aside was filed outside the six-month statute of limitations period set forth by Section 5522(b)(5) of the Judicial Code, 42 Pa.C.S. § 5522(b)(5) (providing a six month limitation period for filing petitions to set aside judicial sales), which was not extended because the Bureau properly served First Niagara with the Rule. Here, the judicial tax sale of the Property was on May 2, 2012, and First Niagara filed its Petition to Set Aside on January 14, 2013. As we concluded in *First Niagara Bank*, "[h]aving found that First Niagara was properly served, we agree that the action is time-barred." *First Niagara Bank*, slip op. at 10 n. 6.