IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Sale of Real Estate by | : | |
| Lackawanna County Tax Claim | : | |
| Bureau, Judicial Tax Sale Property | : | |
| Situate At:  238 Main Street | : | |
| Moosic, Pa. 18507 | : | |
| Tax Map No. 18416-020-012 | : | No. 1708 C.D. 2016 |
| Real Owner: Swinka Realty | : | Argued:  April 12, 2018 |
| Investments, LLC | : | |
| | : | |
| Appeal of: Lackawanna County Tax | : | |
| Claim Bureau | : | |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                      HONORABLE ELLEN CEISLER, Judge
                      HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                              FILED: May 8, 2018


The Lackawanna County Tax Claim Bureau (Bureau) appeals the order of the Court of Common Pleas of Lackawanna County (trial court) granting Swinka Realty Investments, LLC's (Swinka) petition to set aside the judicial sale and vacating the sale of the property at issue to Frederick J. Bunt (Bunt).  For the following reasons, we affirm.


**I.**

James and Loretta McAndrew (the McAndrews), the prior owners of 238 Main Street, Moosic, Lackawanna County, Pennsylvania 18507 (Property),

failed to pay the real estate taxes owed on the Property; therefore, on September 26, 2011, the Property was exposed to an upset tax sale. At that sale, Swinka purchased the Property for $18,000 and paid the full purchase price to the Bureau. In November 2011, the McAndrews filed a petition to set aside the upset tax sale and, for unknown reasons, a hearing on the petition was not held until May 12, 2014. Immediately following the hearing, the trial court denied the McAndrews' petition and sustained the sale of the Property to Swinka, issuing an order stating, "[t]he September 26, 2011 upset tax sale of the property . . . to Swinka Realty Investments, LLC is hereby SUSTAINED." (Reproduced Record (R.R.) at 360a.) This order was not appealed or challenged by any party.

Notwithstanding that there were no longer any impediments to issuance of a deed, a deed to the Property was never recorded. The parties dispute why this did not occur – the Bureau claims Swinka failed to pick up the deed while Swinka claims the Bureau failed to provide it with a deed despite its repeated requests for the Bureau to do so.

On July 14, 2014, Ronald Koldjeski (Koldjeski), the Bureau's Deputy Director, issued a letter to Swinka, stating:

> A while ago, you or your representative put a bid on the above-identified properties. It has been some time and as of this date we have not heard from you concerning the above. This letter is to inform you that you have seven (7) business days from the date of this notice to respond or the sale will be deemed abandoned and will be considered null and void. Please govern yourself accordingly.

(R.R. at 145a.) The letter did not indicate that the upset tax sale was going to be declared null and void because Swinka representatives had failed to "pick up" the deed. Because Swinka failed to respond to the notice, the Bureau deemed the 2011 upset tax sale of the Property abandoned and void.

On February 3, 2016, the Bureau petitioned the trial court for permission to sell the Property, this time at a 2016 judicial tax sale.[1] After a hearing on March 14, 2016, at which time Swinka did not appear, the trial court granted the petition. On March 28, 2016, the Property was sold at the Bureau's judicial tax sale to Bunt for $55,000. Swinka then filed a petition to set aside the judicial tax sale.

## II.

At a hearing on the petition, Koldjeski testified that he instructed his staff to prepare a deed to the Property after the McAndrews failed to appeal from the trial court's May 12, 2014 order. Koldjeski told his staff to contact Swinka by phone and instruct Swinka's representative to pick up the deed. He then sent the July 14, 2014 letter outlined above to Swinka's P.O. Box in Olyphant,

_____

[1] Curiously, the Bureau's February 3, 2016 petition to sell the Property at its 2016 judicial tax sale claims the Bureau fixed an upset price and the Property was exposed to an upset tax sale in 2011, but the Bureau "was unable to obtain a bid sufficient to pay said Upset Price" at that 2011 upset sale. (R.R. at 148a.) This petition makes no mention of Swinka's $18,000 bid on the Property, the fact that Swinka paid the $18,000 at the time of the upset tax sale, the McAndrews' petition to set aside the upset tax sale, or the trial court's order sustaining the upset tax sale to Swinka. The petition lists the McAndrews as the assessed and record owners of the Property and lists Swinka as an interested party with an address of 624 Boulevard Avenue, Dickson City.

Pennsylvania, via First-Class Mail, which was not returned as undeliverable. Because no one from Swinka responded to the letter, the Bureau deemed the prior upset tax sale abandoned and void.

Koldjeski also testified that, before the Property was exposed to the judicial tax sale, the Sheriff's Office attempted to serve Swinka with a copy of that petition and the trial court's rule to show cause. This time, the Bureau used the address of 624 Boulevard Avenue, Dickson City, Pennsylvania, which Koldjeski believed was Swinka's address of record with the Pennsylvania Department of State. Even though the Sheriff's Office noted this address was not found and they were unable to effectuate service, the trial court issued an order on March 16, 2016, authorizing the judicial tax sale of the Property. Koldjeski testified, though, that prior to the sale, his counsel informed him that Swinka requested the Property be removed from the judicial tax sale.

On cross-examination, Koldjeski admitted that a copy of the judicial tax sale petition and rule to show cause were not served on Swinka. He stated that Swinka paid $18,000 for the Property in 2011, which was still being held in an account with the Bureau. Koldjeski testified that Cathy Chelland, a Bureau employee, would have prepared the deed to Swinka, but he did not know where the deed was at the time of the hearing. Koldjeski admitted that Swinka's representatives are at the Bureau's office regularly, but he personally did not attempt to notify them of the judicial tax sale.

4

George Slack (Slack) testified that he rented the Property from Swinka for approximately 26 months beginning in February 2014 and paid his rent to Marcella Gawron, the mother of one of Swinka's principals. When individuals from the Sheriff's Office came to the Property in February 2016, Slack testified that he signed for certain paperwork and then called Marcella Gawron who asked him to take pictures of the documents and send them to her, which he did.

Mark Gawron (Gawron), who owns Swinka along with his family members Jerome and Gerald Gawron, testified that Slack never provided him with any notice or documents related to the March 2016 judicial tax sale. Gawron became aware that the Property was scheduled to be sold at an upset tax sale in 2015, and once he informed the Bureau that he had purchased the Property at a previous sale and was awaiting a deed, the Property was removed from that sale. Gawron testified that he exchanged email messages with Bureau employee Lynn Kobeski about obtaining a copy of the deed to the Property but never received a response other than being told that Cathy Chelland and Koldjeski were currently out of the office. Gawron stated that neither he nor Swinka ever received a copy of Koldjeski's July 14, 2014 letter, and he was not informed that the Bureau deemed the upset tax sale void until a week prior to the June 16, 2016 hearing.

On cross-examination, Gawron testified that Swinka maintains a mailing address of P.O. Box 461, Olyphant, Pennsylvania; its physical address is in Greentown; and Swinka did not report the 624 Boulevard Avenue, Dickson City, address to the Department of State. Gawron admitted that his mother, Marcella Gawron, informed him of a text she received from Slack stating that the Property

5

was slated for Sheriff's sale, not a judicial tax sale. He investigated but could not find the Property listed anywhere for the Sheriff's sale, but admitted that he did not inquire whether the Property was listed for judicial tax sale or an upset tax sale because he previously provided the Bureau with a copy of the trial court's May 12, 2014 order and told it that Swinka was awaiting the deed. When he later learned that the Property was listed for judicial tax sale, he testified that he had his attorney contact the Bureau just prior to the judicial tax sale to have it removed from the sale. Gawron testified that the taxes are paid on all properties he owns in the county, yet the Bureau has refused to give him deeds to other properties as well as this one.

The trial court granted Swinka's petition and vacated the judicial tax sale to Bunt, finding that the Bureau failed to strictly comply with the statutory notice requirements for a tax sale. The Real Estate Tax Sale Law (RETSL)[2] imposes a series of notification requirements – including publication, certified mail, posting and personal service – before a county tax claim bureau can sell real property for delinquent taxes. It noted that the Bureau admitted Swinka was never given notice of the March 28, 2016 judicial tax sale, and the Sheriff's Office's attempt to effect personal service on Swinka was unsuccessful. The trial court also noted that the Bureau failed to make a reasonable effort to put Swinka on notice of the impending judicial tax sale because Swinka was well known to the Bureau, as its representatives frequently conducted business in the Bureau's office. *See In re*

---

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

6

*Sale No. 10*, 801 A.2d 1280, 1288 (Pa. Cmwlth. 2002) (citing Section 607.1 of the RETSL, 72 P.S. § 5860.607a(a)).[3]

In addition, the trial court stated the Bureau is required to hold an upset tax sale before it conducts a judicial tax sale where a property is sold free and clear of all claims, liens, mortgages, etc. *See* Section 610 of the RETSL, 72 P.S. § 5860.610; *Murphy v. Monroe County Tax Claim Bureau*, 784 A.2d 878 (Pa.

---

[3] Added by the Act of July 3, 1986, P.L. 351. That section provides:

> When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, **the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him**. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a) (emphasis added).

7

Cmwlth. 2001). Because the Bureau was required to expose the Property to an upset tax sale after the trial court's May 12, 2014 ruling – prior to exposing the Property to a judicial tax sale in 2016 – the trial court found the judicial tax sale of the Property to Bunt was null and void. This appeal followed.[4]

## III.

The Bureau argues that the trial court erred in finding that the judicial tax sale of the Property to Bunt was null and void because the Property was required again to be exposed to an upset tax sale before a judicial tax sale could take place.[5] Acknowledging that Section 610 of the RETSL, 72 P.S. § 5860.610, provides that a judicial tax sale may take place only if the property is first exposed to an upset tax sale and notwithstanding that the Bureau declared that sale was abandoned, the Bureau still argues that the September 26, 2011 upset tax sale at which Swinka was the successful purchaser satisfied the Section 610 requirement.

---

[4] Our review in a tax sale case is limited to determining whether the trial court abused its discretion, rendered a decision lacking supporting evidence, or clearly erred as a matter of law. *In re Sale No. 10*, 801 A.2d at 1282.

[5] The Bureau argues that property interests are specifically created and defined by state law and that the RETSL does not confer protected property interests upon upset tax sale purchasers. Because Swinka, as a purported upset tax sale purchaser, did not have any interest in the Property protected by the federal and state constitutions, the Bureau argues that the judicial tax sale of the Property was proper. However, the Bureau failed to raise this issue at the hearing before the trial court or in its 1925(b) statement of errors complained of on appeal; therefore, this issue is waived. *See* Pa. R.A.P. 1925(b); *Lancaster County Tax Claim Bureau v. Valenti*, 601 A.2d 445, 446 (Pa. Cmwlth. 1991).

Assuming that the Bureau could unilaterally consider the 2011 upset tax sale abandoned, especially when the trial court's May 12, 2014 order sustained the upset tax sale of the Property to Swinka, the issue then becomes whether a new upset tax sale had to occur before a judicial tax sale could occur. Section 607(a) of the RETSL requires that once a property is sold at an upset tax sale, "[w]ithin thirty (30) days of presentation of the consolidated return, if it shall appear to said court that such sale has been regularly conducted under the provisions of this act, the consolidated return and the sales so made shall be confirmed nisi." 72 P.S. § 5860.607(a). Again, assuming that the Bureau could say that the sale was null and void, we agree with the trial court that a new "upset tax sale" had to occur before the Property could be exposed to a judicial tax sale because the Bureau's action made the initial upset tax sale null and void.

For these reasons, we find no error or abuse of discretion in the trial court's determination that the judicial tax sale was null and void for failure to first expose the Property to an upset tax sale.[6]

---

[6] The Bureau also argues that the trial court erred in declaring the judicial tax sale null and void because it did not strictly comply with the statutory notice requirements for a tax sale.

Initially, we note that there is conflicting evidence in the record as to whether and when Swinka may have received actual notice of the judicial tax sale of the Property. Koldjeski admitted that the Sheriff was unable to effect service on Swinka of the rule to show cause or the petition for the judicial tax sale because the address the Bureau provided to the Sheriff could not be found. We also note, as did the trial court, that the Bureau was required to make reasonable efforts to notify Swinka of the judicial sale of the Property after this attempted service was unsuccessful. *See In re Sale No. 10*, 801 A.2d at 1288 (citing Section 607a of the RETSL, 72 P.S. § 5860.607a; *Tracy v. Chester County Tax Claim Bureau*, 489 A.2d 1334 (Pa. 1985)); *Murphy*, 784 A.2d at 883. Swinka was an entity well known to the Bureau, as it frequently conducted business with the Bureau and appeared at its offices. The record contains numerous instances of communications between Swinka and the Bureau leading up to the judicial tax sale, **(Footnote continued on next page…)**

Accordingly, the trial court's order is hereby affirmed.



_____
DAN PELLEGRINI, Senior Judge



---

**(continued…)**

including phone calls and emails. Except for Koldjeski's vaguely worded July 14, 2014 letter – which was not sent to a valid address and made no mention of picking up a deed to the Property – the Bureau failed to notify Swinka during any of these communications that it considered the 2011 upset tax sale abandoned and void and failed to request a valid address for Swinka. In addition, the Bureau failed to present any evidence that it searched its records for a valid address despite the fact that it admittedly had regular contact with Swinka's representatives regarding numerous properties throughout Lackawanna County.

However, whether Swinka received actual notice of the sale is somewhat irrelevant. The Property's sale to Swinka was confirmed by two court orders -– the May 12, 2014 order sustaining the upset tax sale of the Property to Swinka, and the trial court's *decree nisi* confirming the sale pursuant to 72 P.S. § 5860.607. Not only does the Bureau cite to no authority that it can revoke a sale that has already been confirmed by court order, it cites to no authority that it can file a petition to set aside those orders after the time for appeal has passed. If someone fails to pick up a deed for property purchased at an upset tax sale, the Bureau's remedy is to file a civil action for specific performance.

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Sale of Real Estate by : 
Lackawanna County Tax Claim : 
Bureau, Judicial Tax Sale Property : 
Situate At:  238 Main Street : 
Moosic, Pa. 18507 : 
Tax Map No. 18416-020-012 :  No. 1708 C.D. 2016
Real Owner: Swinka Realty : 
Investments, LLC : 
 : 
Appeal of: Lackawanna County Tax : 
Claim Bureau :

# **O R D E R**

AND NOW, this 8th day of May, 2018, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.

_____

DAN PELLEGRINI, Senior Judge