**MONTGOMERY COUNTY TAX CLAIM BUREAU**

v.

**Barbara QUEENAN, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2014.

Decided Jan. 12, 2015.

Diane S. Tosta, Norristown, for appellant.

---

7. We note that Bouman may still seek relief by filing a breach of contract claim against WMH in the proper judicial forum.

Alexander M. Glassman, Trevose, for appellee Montgomery County Tax Claim Bureau.

BEFORE: ROBERT SIMPSON, Judge, and PATRICIA A. McCULLOUGH, Judge and ANNE E. COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Barbara Queenan appeals from the January 7, 2014 order of the Court of Common Pleas of Montgomery County (trial court) denying her petition to set aside a tax sale. Queenan contends that the Montgomery County Tax Claim Bureau (Bureau) failed to prove compliance with the notice requirements of sections 601(a)(3) and 602(e)(3) of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.601(a)(3) and 5860.602(e)(3), because the Bureau's only evidence of notice consisted of affidavits filed by the sheriff that did not include a copy of the notice of the tax sale. The trial court found that Queenan had actual notice of the tax sale which excused the alleged non-compliance. We reverse.

Queenan was the record owner of property at 11 East Basin Street, Norristown Borough, where she has lived for approximately forty-five years. On September 15, 2010, the Bureau sold the property at a tax upset sale for non-payment of 2008–2009 taxes totaling $1,462.20. QAC, Inc., purchased the property for $8,000.00, and the property was conveyed to QAC, Inc., by deed dated February 4, 2011. Queenan filed a petition to set aside the tax sale on May 29, 2012.

The trial court held a hearing on October 15, 2013. Queenan testified that after she fell behind on tax payments, she entered into a payment plan with XSPAND[1] and made monthly payments, in cash, at TD Bank. She said that at some point she received two checks from XSPAND with a note telling her not to make any more payments.

The Bureau entered into evidence an Affidavit for Posting of Notice of Public Tax Sale, (R–1), indicating that notice of the tax sale was posted on the property on July 22, 2010, and an Affidavit for Personal Service of Notice of Public Tax Sale, (R–2), indicating that notice of the tax sale was served on Queenan on August 16, 2010. The affidavits were not filed with the Montgomery County Prothonotary until June 28, 2012. (Reproduced Record (R.R.) at 105a–06a.)

Queenan described the property as a row house, with no sides and with windows on both sides of the front door. Queenan testified that she did not see any notice posted on her house, door, or mailbox and that she was not personally served with notice of the tax sale. Queenan stated that she first learned of the tax sale after receiving notice of an ejectment action, which was filed in May 2011. (R.R. at 17a.)

After the record was closed, at the Bureau's request and over Queenan's objection, the record was reopened to allow the Bureau to present additional evidence concerning the payment plan and payments made. (R.R. at 45a–46a.) William F. Caldwell is the Second Deputy Treasurer for the county and testified that he became employed by the county in August 2012. Caldwell stated that his review of the workup sheet for the 2010 upset sale of Queenan's property showed that the mini-

---

1. XSPAND was the county's agent for tax claims beginning in the early 2000s through 2012. (Reproduced Record at 47a.)

mum bid of $7,409.76 represented $1,687.37 in delinquent taxes, sale costs, current taxes, and municipal charges. (R.R. at 48a–59a.) Caldwell did not know the terms of Queenan's payment plan, but he stated that according to the county's records, payments were missed in June and July of 2009. (R.R. at 65a, 69a.) Caldwell said that the records also reflected that a double payment was posted in August 2009, and, thereafter, two additional August payments were made totaling the regular monthly amount of $102.71. (R.R. at 71a.)

Caldwell testified that a payment plan keeps property off the tax sale list so long as payments are current. He explained that a non-payment or payment made more than a month late triggers the issuance of a delinquency notice, adding that property is listed for sale "[w]hen the delinquent notice goes out and the full amount is not paid." (R.R. at 75a–76a.) Caldwell acknowledged that the file did not contain a copy of a delinquent notice to Queenan; however, he stated that notes in the file indicate that a delinquent letter was mailed and that the property owner had until August 1, 2009, to make payments. (R.R. at 77a–78a.) Caldwell did not know how and when XSPAND posted payments it received, and he could not say whether or not Queenan's payment had been received on or before August 1, 2009, which was a Saturday, and not posted until Monday, August 3, 2009. (R.R. at 81a–82a.)

Caldwell also acknowledged that the Bureau continued to receive payments from Queenan for almost another year; he explained that it was not uncommon for people to continue making payments and that some succeed in paying off arrears before the tax sale. Caldwell stated that all of Queenan's payments due up to August 2009 were, in fact, made. (R.R. at 82a–83a.)

By order dated January 6, 2014, the trial court denied Queenan's petition to set aside the tax sale. Queenan appealed, and in her statement of matters complained of on appeal, she argued that: (1) the Bureau did not prove compliance with the notice requirements of the Law because the sheriff's affidavits did not include a copy of the notice of the tax sale, and (2) the evidence is insufficient to establish that Queenan breached the payment plan and/or that she received a delinquency notice.

In response,[2] the trial court stated that any non-compliance with the Law's formal notice requirements is excused because Queenan *had* actual notice of the tax sale in July and August of 2009, through personal service and posting,[3] and did not file a petition until May 2012, almost three years later. In addition, the trial court found the evidence sufficient to establish that Queenan entered into a payment plan, missed two payments, and did not make up the missed payments prior to the August 1st deadline.

---

2. The trial court observed that Queenan's appeal was filed on February 7, 2014, 31 days after the date of its order, and suggests that the appeal is untimely under Pa.R.A.P. 903(a). Queenan notes that the appeal could not have been filed on February 6, 2014, because the courthouse was closed due to a snowstorm.

    Citing *Popple v. Luzerne County Tax Claim Bureau*, 960 A.2d 517, 524 n. 3 (Pa.Cmwlth. 2008), the trial court also stated that, although the Bureau has the burden of showing strict compliance with the notice provisions of the Law, it may be prejudiced in meeting this burden by unexplained and lengthy delays in the filing of petitions to set aside tax claim sales. Regarding this observation, Queenan notes that an action to set aside a tax sale is subject to a six-year statute of limitations. 42 Pa.C.S. § 5527.

3. According to the affidavits, the notice was served and posted in 2010.

On appeal to this Court,[4] Queenan argues that the Bureau failed to establish compliance with the notice requirements of the Law. We note that a presumption of regularity attaches to tax sale cases; however, once exceptions to a tax sale are filed, the burden shifts to the tax claim bureau to show that proper notice was given. *In Re Upset Sale Tax Claim Bureau McKean County on September 10, 2007*, 965 A.2d 1244, 1248 (Pa. Cmwlth.2009); *Krawec v. Carbon County Tax Claim Bureau*, 842 A.2d 520, 523 (Pa.Cmwlth.2004). The Law's notice provisions are to be strictly construed, and a tax claim bureau's failure to comply with all of the notice requirements ordinarily nullifies a tax sale. *Cruder v. Westmoreland County Tax Claim Bureau*, 861 A.2d 411, 415 (Pa.Cmwlth.2004); *Ban v. Tax Claim Bureau of Washington County*, 698 A.2d 1386, 1388 (Pa.Cmwlth.1997).

Section 602 of the Law governs the form and content of notice and requires that notice of a tax sale include the purpose, time, and place of the sale, as well as the approximate upset price, a description of the property, and the name of the owner.[5]

4. Our scope of review in a tax sale case is limited to determining whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *In Re Sale of Real Estate by Monroe County Tax Claim Bureau; Appeal of: First Niagara Bank, N.A.*, 91 A.3d 265, 269 n. 6 (Pa.Cmwlth.2014).

5. In relevant part, section 602 states as follows:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

\*    \*    \*

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) Each property scheduled·for sale shall be posted at least ten (10) days prior to the sale.

(f) The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the actual sale enters into an agreement with the bureau to pay the taxes in instalments, in the manner provided by this act.

(g) All notices required by this section other than the newspaper notice and notice in the legal journal shall contain the following provision which shall be conspicuously placed upon said notices and set in at least 10–point type in a box as follows:

**WARNING**

"YOUR PROPERTY IS ABOUT TO BE SOLD WITHOUT YOUR CONSENT FOR DELINQUENT TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET VALUE. IF YOU HAVE ANY QUESTIONS AS TO WHAT YOU MUST DO IN ORDER TO SAVE YOUR PROPERTY, PLEASE CALL YOUR

Additionally, section 601(a)(3) of the Law provides that the notice described in section 602 *must be personally served* on an owner-occupier of real property at least ten days prior to the date of actual sale by the sheriff or his deputy. In relevant part, section 601(a)(3) states as follows:

> *No owner-occupied property may be sold unless the bureau has given the owner occupant written notice of such sale* at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy.... *The sheriff or his deputy shall make a return of service to the bureau* ... setting forth the name of the person served, the date and time and place of service, and *attach a copy of the notice which was served.*

72 P.S. § 5860.601(a)(3) (emphasis added).

In *McKelvey v. Westmoreland County Tax Claim Bureau,* 983 A.2d 1271 (Pa. Cmwlth.2009), *appeal denied,* 608 Pa. 672, 13 A.3d 481 (2010), we held that a tax sale was invalid because the owner was not personally served with notice as required by section 601(a)(3) of the Law. In that case, 2005 realty taxes on 170 acres of land were returned to the tax claim bureau for collection. The tax claim bureau sent a Notice of Return and Claim by certified mail to the owner, who had always lived at the property, and the owner signed the return receipt card on April 28, 2006. Because the taxes remained unpaid, the bureau sent the owner a Notice of Public

Sale, also by certified mail, and the owner signed the return receipt card on May 30, 2007. The sheriff's office posted the property on July 10, 2007, and at the same time, the deputy sheriff attempted to personally serve the owner with notice of the public sale by knocking on his door. When there was no answer, the deputy sheriff left and took the notice with him. The sale proceeded as scheduled, and the property was sold on September 10, 2007. The owner did not file exceptions to the tax sale, and the bureau conveyed the property to the purchaser by deed recorded on December 17, 2007.

On January 3, 2008, the owner filed a complaint in equity seeking to set aside the tax sale on the ground that the bureau failed to provide him personal service of the sale or request the court's permission to waive that requirement. The trial court conducted a non-jury trial, concluded that the failure to provide the owner personal service rendered the sale invalid, and set aside the sale by order dated August 27, 2008.

On appeal in *McKelvey,* we agreed that the tax sale was invalid because the owner was not personally served with notice as required by section 601(a)(3) of the Law. In so holding, we rejected the argument that the property owner's actual knowledge of the tax sale rendered the personal service requirement of section 601(a)(3) unnecessary.[6] Instead, we explained that

---

ATTORNEY, THE TAX CLAIM BUREAU AT THE FOLLOWING TELEPHONE NUMBER ____, OR THE COUNTY LAWYER REFERRAL SERVICE."
72 P.S. § 5860.602.

**6.** In cases involving property that was not owner-occupied, we have held that a tax claim bureau's failure to satisfy the statutory notice requirements of *section 602* of the Law, 72 P.S. § 5860.602, does not invalidate a tax sale where the property owner's actual notice

obviated due process concerns. *See, e.g., In Re: Return of McKean County Tax Claim Bureau,* 701 A.2d 283 (Pa.Cmwlth.1997); *Casaday v. Clearfield County Tax Claim Bureau,* 156 Pa.Cmwlth. 317, 627 A.2d 257 (1993); and *In re Tax Claim Bureau of Lehigh County 1981 Upset Tax Sale Properties,* 96 Pa.Cmwlth. 452, 507 A.2d 1294 (1986) (each holding that where a property owner had actual notice of the tax sale, the lack of formal adherence to statutory notice requirements did not render the tax sale invalid).

[t]he plain language of section 601(a)(3) unequivocally commands that "no owner occupied property may be sold" unless the owner occupant has received personal service of notice. The provision sets forth only one exception, an order waiving the personal service requirement for good cause shown. *The distinction between section 601, requiring personal service of notice to owner occupiers, and section 602, requiring notice by certified mail to all property owners, indicates that the legislature recognized a distinction between an owner who stands to lose his property and one who stands to lose his home as well. By enacting section 601, the legislature expressed a desire to provide a qualitatively different type of notice to an owner occupant and afford such owner increased protection by way of additional notice.* We conclude that the plain language of section 601(a)(3) and the inclusion of that notice provision in section 601 (date of sale), rather than with the other notice requirements set forth in section 602 (notice of sale), constitutes evidence of the General Assembly's intent to create a substantive prohibition to proceeding with a tax sale of property belonging to an owner occupier.

*McKelvey,* 983 A.2d at 1272 (emphasis added). Thus, unless a taxing bureau obtains an order waiving the personal service requirement for good cause shown, its failure to comply with section 601(a)(3) of the Law will render a tax sale invalid.

Queenan argues that because the sheriff's return did not include a copy of the notice, as required by section 601(a)(3), the sheriff's return is insufficient to satisfy the Bureau's burden of proving compliance with that provision. We agree.

■ The general rule is that, in the absence of fraud, the return of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence. *Hollinger v. Hollinger,* 416 Pa. 473, 206 A.2d 1, 3 (1965); *In Re Sale of Real Estate of Monroe County Tax Claim Bureau; Appeal of: First Niagara Bank, N.A.,* 91 A.3d 265, 272 (Pa.Cmwlth. 2014); *Anzalone v. Vormack,* 718 A.2d 1246, 1248–49 (Pa.Super.1998). In *Hollinger,* our Supreme Court held that, in the absence of fraud, the return of service of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence. The Court explained:

> The rule of conclusiveness of a return of service of process is based upon the presumption that a sheriff, acting in the course of his official duties, acts with propriety and, therefore, when the sheriff in the course of such official duties makes a statement, by way of an official return, such statement is given conclusive effect. However, both logic and common sense restrict the conclusive nature of a sheriff's return *only to facts stated in the return of which the sheriff presumptively has personal knowledge,* such as *when* and *where* the writ was served; when, in his official return, the sheriff states that he served a writ at a certain time and at a certain place, such facts are known to the sheriff personally and should be given conclusive effect.

*Id.* at 3 (emphasis in original).

In *In Re Monroe County Tax Claim Bureau,* we relied on *Hollinger* to hold that where a sheriff's return identified the person served as a "supervisor," and the deputy sheriff who effectuated service had no personal knowledge of the individual's authority to accept service, the appellant could have presented evidence challenging the validity of the sheriff's return. The Superior Court held in *Anzalone* that where a constable's return indicated that service of a complaint was made at "1:45

p.m." on "7–6–96" upon the defendant's "girlfriend" at the "[Sunny Hill Apartments]," the date, time, and place of service were conclusively established, but the status of the person on which service was made as well as the defendant's address were facts of which the constable presumptively had no personal knowledge and, thus, were not immune from attack under *Hollinger.*

■ In this case, Bureau relied on the affidavits to meet its burden of proving compliance with all applicable statutory notice requirements. However, because the affidavit of personal service did not include the copy of the notice required by section 601(a)(3), that affidavit of personal service was not "complete on its face." The affidavits contained no information, and the Bureau offered no other evidence, to demonstrate that the form and content of the notice of the tax sale complied with the requirements of section 602 of the Law. Therefore, the affidavits were insufficient to meet the Bureau's burden of proving that the notice required by section 602 of the Law was personally served upon Queenan and properly posted. 72 P.S. §§ 5860.601(a)(3), 5860.602(e)(3).

Finally, the trial court erred in relying on the incomplete affidavits to hold that Queenan had actual notice, through personal service and posting, which excused the Bureau's failure to satisfy the formal notice requirements of section 601(a)(3) of the Law. Even if the affidavits were adequate to establish that Queenan had actual notice of the tax sale, the owner-occupied status of the property implicates section 601(a)(3) of the Law and renders actual notice irrelevant. *McKelvey.* The law is clear that "no owner occupied property may be sold" unless the owner has received personal service of notice. *Id.*

Thus, the Bureau's burden in this proceeding required proof that it complied with the personal service of notice requirement in section 601(a)(3).

We have repeatedly observed that the Law's notice provisions are to be strictly construed, and a tax claim bureau's failure to comply with all of the notice requirements ordinarily nullifies a tax sale. *Cruder; Ban.* For the forgoing reasons, we hold that the Bureau's failure to prove that it provided notice of the tax sale to Queenan in the manner required by section 601(a)(3) of the Law renders the tax sale void.[7] *McKelvey.*

Accordingly, the trial court's order is reversed.

### ORDER

AND NOW, this 12th day of January, 2015, the order of the Court of Common Pleas of Montgomery County, dated January 7, 2014, is reversed.

---

**7.** Having so concluded, we need not address Queenan's arguments that the Bureau failed

to establish either proper posting or a violation of the payment plan.