# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David N. Harris,              :
          Appellant        :
                         :
         v.                :
                         :
County of Lycoming Tax Claim Bureau : 
and Best Homes Design &        :   No. 1029 C.D. 2019
Remodeling, LLC               :   Argued: December 8, 2020


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED:  January 7, 2021

David N. Harris (Harris) appeals from the Lycoming County Common Pleas Court's (trial court) June 24, 2019 order denying his Petition to Set Aside Upset Tax Sale (Petition). The issue before this Court is whether the trial court erred by concluding that Harris had actual knowledge of the September 12, 2018 upset tax sale (Tax Sale). After review, we reverse.

Harris resides at and is the record owner of the property located at 1615 Walnut Street, Williamsport, Lycoming County (County), Pennsylvania (Property).[1] Harris failed to pay the real estate taxes owed for the Property for the 2013, 2014, 2015, 2016 and 2017 tax years.[2] *See* Reproduced Record (R.R.) at 65a, 96a, 98a. In September 2015, after the County Tax Claim Bureau (Bureau) listed the Property

---

[1] Harris explained that he purchased the Property but, at some point, lost it in foreclosure, and his father purchased it. Thereafter, he rented the Property from his father for four or five years. In 2012 or 2013, after his father passed away, Harris inherited the Property. *See* Reproduced Record (R.R.) at 97a-98a.

[2] As of May 2019, Harris also owed 2018 real estate taxes. *See* R.R. at 65a.

for tax sale, Harris entered into a payment agreement with the Bureau. *See* R.R. at 65a-67a, 99a-100a. By December 17, 2015 letter, the Bureau notified Harris that he was in default of the payment agreement, and afforded him two weeks to bring his payments up to date. *See* R.R. at 68a-69a, 100a. Because Harris failed to respond to the default letter, the Bureau terminated the payment agreement on January 11, 2016. *See* R.R. at 66a-69a, 100a-101a. The Bureau placed the Property on the September 14, 2016 tax sale list and notified Harris. *See* R.R. at 69a, 91a, 101a.

However, on September 14, 2016, Harris filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania (Bankruptcy Court), which removed the Property from the September 14, 2016 tax sale. *See* R.R. at 46a-55a, 101a. Because Harris failed to comply with the Bankruptcy Court's September 14, 2016 order (to pay filing fees and provide his Social Security number), his bankruptcy case was dismissed on September 26, 2016. *See* R.R. at 47a, 101a. Harris did not notify the Bureau that his bankruptcy case was dismissed. *See* R.R. at 70a. The Bureau discovered the dismissal in October 2017 during a routine bankruptcy status check, and placed the Property on the September 2018 Tax Sale list. See R.R. at 70a-71a.

On May 4, 2018, the Bureau issued a Notice of Public Sale (Notice) informing Harris that the Property would be sold at the Tax Sale on September 12, 2018. *See* R.R. at 32a, 71a, 85a, 89a. The Notice specified that: Harris owed $37,867.17 in delinquent real estate taxes; payment would remove the Property from the Tax Sale; the Bureau would begin posting the Property on June 1, 2018; and, if the delinquent taxes were not paid by July 31, 2018, the Tax Sale would be published in the Williamsport Sun-Gazette and the Lycoming Reporter. *See* R.R. at 32a, 71a-72a. The Bureau sent the Notice by regular and certified mail (Certified Mail No. 9269 3969 0037 9880 9492 28) to Harris at the Property, and Harris signed for the

certified mailing on May 11, 2018. *See* R.R. at 33a, 72a-74a, 85a, 89a, 93a, 95a-96a.

On June 6, 2018, the Bureau, through a third-party vendor, posted a June 1, 2018 Notice of Public Tax Sale on the Property's front door. *See* R.R. at 10a, 12a-13a, 34a-35a, 74a-76a, 87a-88a, 117a. The third-party vendor did not personally serve Harris. *See* R.R. at 83a. On August 10, 2018, the Bureau advertised the Property's Tax Sale in the Lycoming Reporter. *See* R.R. at 14a, 79a. On August 13, 2018, the Bureau advertised the Property's Tax Sale in the Williamsport Sun-Gazette. *See* R.R. at 14a, 78a. Harris did not attempt to pay his delinquent taxes to remove the Property from the Tax Sale list. *See* R.R. at 76a.

On September 12, 2018, the Property was exposed at the Tax Sale, and Bests Homes Design & Remodeling, LLC (Bests) purchased it for $37,867.17. *See* R.R. at 14a. On September 13, 2018, the Bureau mailed Harris a Notice of Sale to Property Owner, which Harris received. *See* R.R. at 15a, 123a. The Notice of Sale to Property Owner instructed Harris that he "may file objections or exceptions to the [Tax S]ale immediately[,] but no later than thirty (30) days following the confirmation nisi of the return by the [trial] court." R.R. at 15a. On September 20, 2018, Harris's wife contacted the Bureau and inquired about the sale.[3] *See* R.R. at 90a.

On October 5, 2018, the Bureau filed a Consolidated Return with the trial court at Docket No. 18-0630 listing the properties sold on September 12, 2018, including the Property, in accordance with Section 601(a)(3) of the Real Estate Tax Sale Law (RETSL),[4] 72 P.S. § 5860.601(a)(3), and declaring that notice thereof was given pursuant to Section 602 of the RETSL, 72 P.S. § 5860.602.[5] *See* R.R. at 36a-

---

[3] Harris's wife is not a record owner of the Property. *See* R.R. at 90a.
[4] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.601(a)(3) (personal service required 10 days before sale of owner-occupied property).
[5] 72 P.S. § 5860.602 (notice by publication and certified mail required 30 days before sale).

40a, 77a. On October 11, 2018, the trial court issued the Decree Nisi at Docket No. 18-0630 confirming the sales and declaring that they will become absolute if no objections are filed within 30 days.[6] *See* R.R. at 41a, 77a-78a. Harris received the Decree Nisi but did not file objections thereto within 30 days. *See* R.R. at 131a. Rather, on October 12, 2018, Harris filed a Petition to Redeem the Property (Redemption Petition) at Docket No. 18-1481.[7] *See* R.R. at 80a-82a, 94a. Harris eventually withdrew the Redemption Petition.[8] *See* R.R. at 82a.

On December 20, 2018, Harris filed the Petition at Docket No. 18-1916, therein alleging that the Bureau failed to present evidence establishing its compliance with Sections 601(a)(3) and 602 of the RETSL and Section 308(a)(3) of the RETSL,[9] 72 P.S. § 5860.308(a)(3), and that he "is able to pay the taxes." R.R. at 7a; *see also* R.R. at 3a-16a. The trial court scheduled a hearing on the Petition for May 28, 2019.

In the meantime, by March 15, 2019 letter, the Bureau notified Harris and Bests:

> The [Bureau] has recently reviewed this matter in preparation for the upcoming hearing on the pending Petition.
>
> As you may know, the [RETSL] allows for the [Bureau] to petition the [trial court] to waive the requirement of personal notice for good cause shown when personal

---

[6] According to the Decree Nisi, if no objections were filed, the Prothonotary would enter, as of course, a decree of absolute confirmation, the deeds would be issued to the purchasers and acknowledged, and the sale proceeds would be distributed. *See* R.R. at 41a.

[7] Harris received the trial court's Decree Nisi and took it to a lawyer to object to the Tax Sale. *See* R.R. at 119a-120a. However, the lawyer filed the Redemption Petition. *See* R.R. at 120a. Although the Bureau was not a party to the Redemption Petition, Harris served it on the Bureau. *See* R.R. at 80a-82a, 95a.

[8] Because Harris's initial counsel refused to timely respond to Harris's inquiries, Harris contacted his current counsel, who filed the Petition. *See* R.R. at 120a.

[9] 72 P.S. § 5860.308(a)(3) (notice that the property will be advertised and exposed for sale if delinquent taxes are not paid within the one-year discharge period).

notice cannot be served on owner occupied properties. This action was not taken by the [Bureau] for the [Tax S]ale conducted in September 2018. As a result, it is the Bureau's position that personal service was not performed in accordance with the [RETSL] in this matter.

As a result[,] the [Bureau] intends to refund the monies paid by the purchasers of the [P]roperty at the [Tax S]ale. We would like to accomplish this prior to the upcoming hearing so that the parties are not further inconvenienced or incur additional expenses. . . .

R.R. at 60a. Despite the Bureau's acknowledgement that its notice was defective, Bests elected to proceed with the litigation. *See* Harris Br. at 4-5. Accordingly, on April 23, 2019, Bests filed its response in opposition to the Petition and its supporting brief, therein declaring that Harris had actual notice of the Tax Sale that waived any notice deficiencies, and Harris did not properly contest the Tax Sale. *See* R.R. at 17a-30a, 61a. On May 28, 2019, the trial court conducted a hearing. *See* R.R. at 62a-140a. On June 24, 2019, the trial court denied the Petition. Harris appealed to this Court.[10]

On July 31, 2019, the trial court ordered Harris to file a concise statement of errors complained of on appeal within 21 days (i.e., by August 26, 2019), in accordance with Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement), and informed Harris that his failure to do so "SHALL result in a waiver."[11] R.R. at 166a. On August 29, 2019, because Harris had not filed a Rule 1925(b) Statement, the trial court issued an opinion in support of its July

---

[10] "'This [C]ourt's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion.' *City of Phila. v. Auguste*, 138 A.3d 697, 700 (Pa. Cmwlth. 2016)." *City of Phila. v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017). "Statutory interpretation is a question of law over which our standard of review is *de novo*, and our scope of review [is] plenary." *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 389 (Pa. 2017).

[11] The trial court's July 31, 2019 order was entered onto the docket on August 5, 2019.

5

31, 2019 order in compliance with Rule 1925(a), therein declaring that Harris had waived all issues on appeal. *See* R.R. at 167a.

On October 7, 2019, this Court ordered the parties to address Harris's waiver in their principal briefs on the merits or other appropriate motion. On October 29, 2019, Bests filed a Motion to Dismiss/Quash the Appeal (Motion to Dismiss) because, due to Harris's waiver, there were no issues before the Court. On November 6, 2019, Harris filed an answer to Bests' Motion to Dismiss, claiming that since the trial court did not send its July 31, 2019 order to Harris's counsel, he could not have timely responded to it. On November 12, 2019, this Court denied the Motion to Dismiss without prejudice, vacated its October 7, 2019 Order and the briefing schedule, and remanded the matter to the trial court to determine whether Harris's counsel received the July 31, 2019 order, and whether Harris was entitled to file his Rule 1925(b) Statement *nunc pro tunc*.

The trial court conducted an evidentiary hearing on March 3, 2020, and, on March 4, 2020, concluded that its July 31, 2019 order was not served on Harris's counsel and, thus, Harris was entitled to file his Rule 1925(b) Statement *nunc pro tunc*. *See* R.R. at 168a-169a. On March 9, 2020, Harris filed his Rule 1925(b) Statement. *See* R.R. at 161a-165a. On March 11, 2020, the trial court filed its supplemental opinion pursuant to Rule 1925(a). Harris's issue is now properly before this Court for review.

Harris argues that the trial court committed an error of law or abused its discretion by concluding that Harris had actual knowledge of the Tax Sale. Specifically, Harris claims that the Bureau failed to meet its burden of proving that it strictly complied with the RETSL's notice requirements.

"[T]he collection of taxes may not be implemented without due process of law." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). This Court has explained:

6

A property owner's right to notice 'prior to commencing with an upset tax sale [is] established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution[, U.S. Const. amend. XIV, § 1,] and by the Law.' *Rice v. Compro Distrib*[*.*]*, Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). The United States Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:

> [P]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

*Jones v. Flowers*, 547 U.S. 220 . . . (2006). Due process is satisfied when the Bureau, before commencing with a tax sale, 'provide[s] "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."' *Id.* (quoting *Mullane v. Cent*[*.*] *Hanover Bank & T*[*r.*] *Co.*, 339 U.S. 306 . . . (1950)).

*In re Consol. Reports & Return by Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016).

The notice requirements applicable to the instant matter are set forth in Sections 601 and 602 of the RETSL. Section 601(a)(3) of the RETSL, entitled Date of Sale, provides:

> No owner-occupied property may be sold unless the [B]ureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the [B]ureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the [B]ureau written proof of service, setting forth the name of the person served, the date and time and

7

place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the [B]ureau to make such personal service, the [B]ureau may petition the [trial court] to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. § 5860.601(a)(3). Section 602 of the RETSL, entitled Notice of Sale, further specifies, in relevant part:

(a) At least thirty (30) days prior to any scheduled sale[,] the [B]ureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

. . . .

(e) In addition to such publications, similar notice of the sale shall also be given by the [B]ureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by [the RETSL].

(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the [B]ureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the [B]ureau to determine the

8

last post office address known to said collector and county assessment office.

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

(f) The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the [B]ureau, be stayed if the owner thereof or any lien creditor of the owner on or before the actual sale enters into an agreement with the [B]ureau to pay the taxes in installments, in the manner provided by this [RETSL].

(g) All notices required by this section other than the newspaper notice and notice in the legal journal shall contain the following provision which shall be conspicuously placed upon said notices and set in at least 10-point type in a box as follows:

**WARNING**

'YOUR PROPERTY IS ABOUT TO BE SOLD WITHOUT YOUR CONSENT FOR DELINQUENT TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET VALUE. IF YOU HAVE ANY QUESTIONS AS TO WHAT YOU MUST DO IN ORDER TO SAVE YOUR PROPERTY, PLEASE CALL YOUR ATTORNEY, THE TAX CLAIM BUREAU AT THE FOLLOWING TELEPHONE NUMBER _____, OR THE COUNTY LAWYER REFERRAL SERVICE.'

. . . .

72 P.S. § 5860.602.

This Court has summarized:

Section 602 of the [RETSL] governs the form and content of notice and requires that notice of a tax sale include the purpose, time, and place of the sale, as well as the approximate upset price, a description of the property, and the name of the owner. Additionally, [S]ection 601(a)(3)

9

of the [RETSL] provides that the notice described in [S]ection 602 [of the RETSL] *must be personally served* on an owner-occupier of real property at least ten days prior to the date of actual sale . . . .

*Montgomery Cnty. Tax Claim Bureau v. Queenan*, 108 A.3d 947, 950-51 (Pa. Cmwlth. 2015) (emphasis in original; footnote omitted).  Accordingly,

'the Bureau has the burden of proving compliance with the statutory notice provisions of the [RETSL].'  *In re Tax Sale of Real Prop*[.] *Situated in Jefferson T*[*wp.*], 828 A.2d 475, 478 (Pa. Cmwlth. 2003)[,] *aff'd*, . . . 859 A.2d 471 ([Pa.] 2004).  [Although a] presumption of regularity attaches to tax sales[,] . . . a property owner can overcome this presumption by challenging the sale based on the agency's non-compliance with statutory tax sale requirements.  *In re 1999 Upset Sale of Real Estate*, 811 A.2d 85, 88 (Pa. Cmwlth. 2002).

*Dwyer v. Luzerne Cnty. Tax Claim Bureau*, 110 A.3d 223, 225-26 (Pa. Cmwlth. 2015).  Finally, "[t]he [RETSL's] notice provisions are to be strictly construed, and a tax claim bureau's failure to comply with all of the notice requirements ordinarily nullifies a tax sale."  *Montgomery Cnty. Tax Claim Bureau*, 108 A.3d at 950.

At the May 28, 2019 hearing, Bureau Director Thomas D. Heap (Heap) acknowledged that, although it appears that Harris received the Notice by certified mail on May 11, 2018, and it was posted on the Property on June 1, 2018, the Bureau did not personally serve the Notice on Harris before the September 12, 2018 Tax Sale.  *See* R.R. at 83a-84a.

Harris testified that he did not recall receiving the Notice, and could not say whether the signature on the May 11, 2018 certified mailing receipt for the Notice was his.[12]  *See* R.R. at 107a, 126a-128a.  Harris explained that the "D" in his purported signature was close to his, but it did not include his middle initial "N,"

---

[12] Bests' counsel asked the trial court to review and compare Harris's signatures on the certified mailing receipt and the bankruptcy forms.  *See* R.R. at 33a, 54a, 129a.

which he claimed he always used when signing a document. *See* R.R. at 127a-128a, 130a. He also declared that he does not receive or read the Williamsport Sun-Gazette or the Lycoming Reporter, and he was not informed by his wife or anyone else about the Tax Sale.[13] *See* R.R. at 111a.

Further, he did not recall seeing the Notice posted on his front door, explaining that his wife was staying with her ailing mother, he does not use the front door, and someone else mows his lawn.[14] *See* R.R. at 107a-109a, 116a-117a, 124a-126a. Harris described that his home has five or six entrances, he enters and exits through the mudroom between the garage and the kitchen, and he would not have seen a notice where the Bureau claimed to have posted it.[15] *See* R.R. at 125a-126a.

Harris admitted that he did not pay real estate taxes owed for the Property from 2013 through 2017, defaulted on his 2015 payment plan, filed for bankruptcy to stay the 2016 tax sale, and then defaulted on the bankruptcy without notifying the Bureau that the bankruptcy action had been dismissed. *See* R.R. at 98a-99a, 107a-115a. He was also aware that he "owed a bunch" of taxes on the Property, had the money, and intended to pay them in the fall of 2018, but was waiting for his counsel to notify him of the best course of action. R.R. at 118a; *see also* 98a-99a. Notwithstanding, the Bureau did not personally serve Notice on him ten days before the 2018 Tax Sale. *See* R.R. at 117a, 124a.

Relying on *Cruder v. Westmoreland County Tax Claim Bureau*, 861 A.2d 411 (Pa. Cmwlth. 2004), Bests argued to the trial court that Harris's actual

---

[13] Harris explained that his wife would not be looking for Tax Sale information because he did not tell her that he defaulted on the real estate taxes. *See* R.R. at 111a.

[14] Harris claimed the Notice was not on the door when he painted the front porch in early 2019, and he does not know who would have removed it. *See* R.R. at 109a-110a.

[15] Notably, Harris did not recall admitting in response to the Bureau's request for admissions that the Property was posted on June 1, 2018. *See* R.R. 115a-116a.

knowledge of the Tax Sale waived any defect in the Bureau's notice. The trial court agreed, stating:

> This [trial c]ourt concurs with [Bests'] reliance on *Cruder* . . . and finds said precedent to be analogous to [this] matter. The circumstances at bar demonstrate that [] Harris had actual knowledge of the September 12, 2018 Tax Sale, which effectively waives any notice defect . . . [under] the [RETSL]. Accordingly, [] Harris'[s] [Petition] is hereby DENIED.

Trial Ct. Order, R.R. at 155a. Bests makes the same argument on appeal to this Court.

In *Cruder*, the property owner was aware of his tax delinquency and sought to resolve the arrearages by agreement that made clear the property would be exposed to tax sale in the event he failed to make payments as agreed. After the property owner defaulted on the agreement, the tax claim bureau mailed him notice of the property's sale by certified mail, and the property owner's controller signed for it. The tax claim bureau also advertised and posted notice on the property. Four days after the controller signed for the certified mailing, the property owner sent the tax claim bureau a check to cover a portion of the delinquent taxes. The property was sold at tax sale and the property owner objected based on defective notice under Section 602 of the RETSL. The trial court concluded that the posting was proper, but the certified mailing was defective. The trial court nevertheless held that the defect was waived, since circumstantial evidence established that the property owner had actual knowledge of the impending tax sale. This Court affirmed the trial court's order.

12

The Bureau's only response to Bests' argument[16] is that *McKelvey v. Westmoreland County Tax Claim Bureau*, 983 A.2d 1271 (Pa. Cmwlth. 2009), and *Montgomery County Tax Claim Bureau v. Queenan*, 108 A.3d 947 (Pa. Cmwlth. 2015), were decided after *Cruder* and, in both cases, this Court concluded that the tax claim bureau's failure to personally serve notice of a tax sale on an owner-occupant in accordance with Section 601(a)(3) of the RETSL was fatal. Notwithstanding, the Bureau expressed that it "takes no position on whether those cases can be distinguished from the instant case[.]" Bureau Br. at 2.

This Court observes that, in *Cruder*, unlike the instant matter, there was evidence before the trial court that Cruder attempted to pay his tax delinquency just days after the certified mailing was delivered and before the property was exposed for sale. Thus, *Cruder* is distinguishable. Moreover, in the years since *Cruder* was decided, in *McKelvey* and *Montgomery County Tax Claim Bureau*, this Court ruled that, even when the other RETSL notice requirements have been met, where a tax claim bureau fails to personally serve notice of the tax sale, or seek a waiver thereof from the trial court pursuant to Section 601(a)(3) of the RETSL, the tax sale is invalid. The personal service requirement in Section 601(a)(3) of the RETSL was not at issue in *Cruder*. Under the circumstances, *Cruder* is inapposite.

Bests acknowledges that *McKelvey* and *Montgomery County Tax Claim Bureau* are applicable to owner-occupied residences, but retorts that this Court did not overrule *Cruder* therein, and asserts that "this Court has not considered whether the RETSL requires strict compliance [for] a continued sale, or as in this case[,] two continued sales, of which the proper[t]y owner had been properly noticed, but where the owner had strategically and intentionally acted to stay the previous sale." Bests

---

[16] The Bureau stated that it filed its "short submission to call to the Court's attention two cases that appear to be controlling law in this matter but were not identified by [Harris's] counsel." Bureau Br. at 1.

13

Br. at 21. While that may be true, the instant matter is not the test case for this Court to decide that issue.

The "RETSL is for the collection of taxes and is not intended to create investment opportunities for others, or to strip taxpayers of their properties." *Brodhead Creek Assocs., LLC v. Cnty. of Monroe*, 231 A.3d 69, 74 (Pa. Cmwlth. 2020). In addition, it is well settled that

> [t]he notice provisions of the [RETSL] are designed to 'guard against deprivation of property without due process.' *Donofrio v. Northampton C[nty.] Tax Claim Bureau*, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002). Because the government actor attempting to take property bears the constitutional duty to provide notice prior to a tax sale, our inquiry into whether adequate notice was provided must focus 'not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [tax claim b]ureau comply with the requirements of the [RETSL].' *Smith v. Tax Claim Bureau of Pike C[nty.]*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003).

*In re Consol.*, 132 A.3d at 644; *see also Brodhead Creek Assocs., LLC*.

Further, Section 601(a)(3) of the RETSL, which is applicable here, expressly declares: "No owner-occupied property *may be sold* unless the [B]ureau has given the owner[-]occupant written notice of *such sale* at least ten (10) days prior to *the date of actual sale*[.]" 72 P.S. § 5860.601(a)(3) (emphasis added). Finally, the *McKelvey* Court explained:

> The distinction between [S]ection 601 [of the RETSL], requiring personal service of notice to owner[-]occupiers, and [S]ection 602 [of the RETSL], requiring notice by certified mail to all property owners, indicates that the legislature recognized a distinction between an owner who stands to lose his property and one who stands to lose his home as well. By enacting [S]ection 601 [of the RETSL], the legislature expressed a desire to provide a qualitatively different type of notice to an owner[-]occupant and afford such owner increased protection by way of additional

14

notice. We conclude that the plain language of [S]ection 601(a)(3) [of the RETSL] and the inclusion of that notice provision in [S]ection 601 [of the RETSL] (date of sale), rather than with the other notice requirements set forth in [S]ection 602 [of the RETSL] (notice of sale), constitutes evidence of the General Assembly's intent to create a substantive prohibition to proceeding with a tax sale of property belonging to an owner[-]occupier.

*McKelvey*, 983 A.2d at 1274; *see also Montgomery Cnty. Tax Claim Bureau.*

Based on the foregoing, Section 601(a)(3) of the RETSL requires this Court to focus on the *Bureau's* actions (rather than Harris's) relative to the *impending* Tax Sale of the Property (rather than the *previously-scheduled* sales). Because the record evidence is clear that the Bureau did not personally serve Notice of the September 12, 2018 Tax Sale on Harris as mandated by Section 601(a)(3) of the RETSL,[17] the Tax Sale was invalid and the trial court erred by concluding otherwise. Accordingly, we reverse the trial court's order.

_____
ANNE E. COVEY, Judge

---

[17] Notwithstanding, this Court does not countenance Harris's continued refusal to pay the delinquent taxes, or his repeated, documented efforts to thwart the Bureau's efforts to collect them.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David N. Harris,                                          :
          Appellant                              :
                                        :
          v.                                            :
                                          :
County of Lycoming Tax Claim Bureau :
and Best Homes Design &                    :     No. 1029 C.D. 2019
Remodeling, LLC                                      :

## O R D E R

AND NOW, this 7th day of January, 2021, the Lycoming County Common Pleas Court's June 24, 2019 order is reversed.


                                     _____

                                     ANNE E. COVEY, Judge