IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Spence,                           :
                Appellant              :
                                   :
      v.                    :
                                   :   No. 829 C.D. 2024
Tax Claim Bureau of Delaware County    :   Submitted: June 3, 2025


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED:  June 27, 2025


John Spence (Spence) appeals from the Delaware County (County) Common Pleas Court's (trial court) May 22, 2024 order (docketed on May 24, 2024) denying his Petition to Set Aside the Tax Sale (Petition) of his property located at 332 Kerlin Street in Upper Chester, Pennsylvania (Property). There is one issue before this Court:[1] whether the Tax Claim Bureau of Delaware County (Bureau) notified Spence of the tax sale in accordance with the Real Estate Tax Sale Law (RETSL).[2] After review, this Court affirms.

---

[1] In his Statement of the Questions Involved, Spence presents four issues for this Court's review: whether the trial court erred by denying the Petition when: (1) Spence did not receive requisite notice of the tax sale; (2) the Tax Claim Bureau of Delaware County (Bureau) failed to exercise due diligence to locate and notify Spence of the tax sale; (3) the Bureau failed to record when it purportedly gave Spence actual notice of the tax sale on August 22, 2023; and (4) Spence denies receiving any notices and cannot recall being told about the tax sale on August 22, 2023. *See* Spence Br. at 6-7. This Court addresses Spence's latter three issues as part of its analysis of the first issue.

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

Spence purchased the Property in 2014 for $17,000.00. *See* Reproduced Record (R.R.) at 6;[3] *see also* Supplemental Reproduced Record (S.R.R.), Bureau Ex. 1, at 28-34.[4] Due to outstanding taxes owed for the 2021 and 2022 tax years, the Bureau exposed the Property to an upset tax sale on September 21, 2023. Mariana Belen (Belen) purchased the Property at the tax sale for $20,000.00. On October 13, 2023, Spence filed the Petition in the trial court. The trial court held a hearing on May 21, 2024. By May 22, 2024 order (docketed on May 24, 2024), the trial court denied the Petition.[5] Spence timely appealed to this Court.[6]

---

[3] In the Reproduced Record, Spence did not number the pages with a small "a" as required by Pennsylvania Rule of Appellate Procedure (Rule) 2173. *See* Pa.R.A.P. 2173 (providing "the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . : thus 1, 2, 3, etc., followed . . . by a small a, thus la, 2a, 3a, etc. . . ."). For convenience, the page numbers referenced herein are consistent with the Reproduced Record.

[4] The Property's purchaser, Mariana Belen (Belen), attached to her brief the Bureau's exhibits not included in Spence's Reproduced Record. *See* Belen Br. at 4. This Court accepts those documents as a Supplemental Reproduced Record. Belen did not number the pages, nor did she include a small "b" as required by Rule 2173 (providing "the pages of . . . any supplemental reproduced record shall be numbered separately in Arabic figures . . . : thus 1, 2, 3, etc., . . . followed . . . by a small b, thus 1b, 2b, 3b, etc."). For convenience, this Court will refer to the pages as electronically numbered.

[5] Spence filed a motion for reconsideration in the trial court on June 2, 2024, and a post-trial motion on June 3, 2024. *See* Trial Ct. Op. at 3 (R.R. at 60). The trial court denied the post-trial motion on July 8, 2024. *See id.* The trial court did not rule on the motion for reconsideration because it was divested of jurisdiction. *See id.*

[6] "'This [C]ourt's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion.' *City of Phila. v. Auguste*, 138 A.3d 697, 700 (Pa. Cmwlth. 2016)." *City of Phila. v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017).

Although the trial court did not order him to do so, Spence filed a Concise Statement of Errors Complained of on Appeal in the trial court on August 6, 2024, and the trial court issued an opinion thereafter.

By March 27, 2025 Order, this Court precluded the Bureau from filing a brief and participating at oral argument due to its failure to timely file a brief pursuant to this Court's January 24, 2025 Order.

2

Initially, "the collection of taxes may not be implemented without due process of law." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). This Court has explained:

> A property owner's right to notice "prior to commencing with an upset tax sale [is] established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States [(U.S.)] Constitution[, U.S. Const. amend. XIV, § 1,] and by the [RETSL]." *Rice v. Compro Distrib*[.]*, Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). The [U.S.] Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:
>
> > [P]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.
>
> *Jones v. Flowers*, 547 U.S. 220 (2006). Due process is satisfied when the [tax claim b]ureau, before commencing with a tax sale, "provide[s] 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent*[.] *Hanover Bank & T*[r.] *Co.*, 339 U.S. 306 (1950)).
>
> *In re Consol. Reps. & Return by the Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644 (Pa. 2016) (*en banc*) (*Appeal of Neff*).

*In re Sale of Tax Delinq. Prop. on Oct. 19, 2020*, 308 A.3d 890, 893-94 (Pa. Cmwlth. 2024).

To ensure Pennsylvania property owners are afforded proper due process, the General Assembly, through "[t]he [RETSL,] requires that advance notice of [an upset tax] sale be given to members of the public . . . [and] each owner

3

of the property." *In re Upset Tax Sale of Sept. 29, 2014*, 163 A.3d 1072, 1074-75 (Pa. Cmwlth. 2017) (footnote omitted). Specifically, Section 602 of the RETSL, 72 P.S. § 5860.602, requires three forms of notice a tax claim bureau shall provide before exposing a property to an upset tax sale.[7] Section 602(e)(1) of the RETSL requires a tax claim bureau to provide notice of a tax sale "[a]t least thirty (30) days before the date of the sale, by [U.S.] **certified mail**, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by [the RETSL]." 72 P.S. § 5860.602(e)(1) (emphasis added). Pursuant to Section 602(a) of the RETSL, the tax claim bureau shall **publish** notice of the tax sale in two newspapers and one legal journal at least 30 days prior to the scheduled sale. *See* 72 P.S. § 5860.602(a). In addition, Section 602(e)(3) of the RETSL mandates that the tax claim bureau shall **post** notice at "[e]ach property scheduled for sale . . . at least ten (10) days prior to the sale." 72 P.S. § 5860.602(e)(3).

Spence argues that the trial court erred by denying the Petition because: (1) he did not receive requisite notice of the tax sale; (2) he had the funds to pay the delinquent taxes; (3) the Bureau failed to exercise due diligence to locate and notify him of the tax sale; (4) the Bureau failed to record that it actually notified him by telephone on August 22, 2023; and (5) he cannot recall being told about the tax sale.

This Court has declared:

> **In all tax sale cases**, the tax claim bureau "**has the burden of proving compliance with the statutory notice provisions**." *Krawec v. Carbon* [*Cnty.*] *Tax Claim Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004). Section 602 [of the RETSL] requires **three different forms** of notice to property owners prior to an upset tax sale: **publication**, **posting**, **and mail**. "**If any of the three types of notice is defective**, **the tax sale is void**."

---

[7] Section 601(a)(3) of the RETSL, 72 P.S. § 5860.601(a)(3), sets forth additional notice requirements for owner-occupied properties.

4

> *Gladstone v. Fed[.] Nat[’l] Mortg[.] Ass[’n]*, 819 A.2d
> 171, 173 (Pa. Cmwlth. 2003).

*In re Sale of Tax Delinq. Prop.*, 308 A.3d at 898 (footnote omitted) (quoting *Appeal of Neff*, 132 A.3d at 644-45).

The RETSL requires additional notification efforts if certified mailing of a tax sale notice is unsuccessful. Section 602(e)(2) of the RETSL provides:

> If return receipt is not received from each owner pursuant to the provisions of clause (1) [(related to certified mailing 30 days before the tax sale)], then, **at least ten (10) days before the date of the sale**, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by [**U.S.**] **first class mail**, proof of mailing, **at his last known post office address** by virtue of the knowledge and information possessed by the [tax claim] bureau, by the tax collector for the taxing district making the return[,] and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the [tax claim] bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. § 5860.602(e)(2) (emphasis added). Importantly, a tax claim bureau must show that it *sent* all required tax sale notices; it need not show that a property owner actually *received* them. *See FS Partners v. York Cnty. Tax Claim Bureau*, 132 A.3d 577 (Pa. Cmwlth. 2016); *see also* Section 602(h) of the RETSL, 72 P.S. § 5860.602(h) ("No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section.").

Section 607.1(a) of the RETSL[8] further mandates that if a mailed notification is returned to the Bureau under circumstances that raise doubt as to whether the owner received it, "**the [B]ureau must exercise reasonable efforts to**

---

[8] Added by Section 30 of the Act of July 3, 1986, P.L. 351.

**discover the whereabouts of such person or entity and notify him**[,]" and "regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof[.]" 72 P.S. § 5860.607a(a) (emphasis added).

> The [tax claim] bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office[,] and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.

72 P.S. § 5860.607a(a).

At the trial court hearing in the instant case, Spence testified that, although the Bureau's records reflect that his mailing address is at the Property, he lives approximately 12 to 15 blocks away at 408 East 19th Street, Chester, Pennsylvania. *See* R.R. at 12. He acknowledged that the County's June 13, 2014 Property Registration specifies: "Mail Tax Bill to: John Spence, 332 Kerlin Street, Chester, P[A] 19013[,]" S.R.R. at 31, and his January 14, 2015 Realty Transfer Tax Statement of Value reflects that "[a]ll inquiries may be directed to" John Spence at 332 Kerlin Street, Chester, PA 19013. S.R.R. at 33; *see also* R.R. at 12.

Spence described that the Property has been vacant, boarded up, and under reconstruction since he purchased it 10 years earlier. *See* R.R. at 14. He recalled that either he or his daughter visited the Property regularly - at least every three days - in the summer of 2023. *See* R.R. at 12-13. Spence recounted that he would check for whether the grass was mowed, and whether there was any mail. *See* R.R. at 12. He declared that the Property did not have a mailbox or mail slot, and that the Property's neighbor would let him know if anything was left at the door. *See* R.R. at 13-14.

6

Spence admitted that he was required to pay taxes on the Property and claimed that he had previously paid all taxes he owed on it. *See* R.R. at 7, 15-18, 27. Notwithstanding, he acknowledged that the Bureau's records reflect that the Property was exposed to the tax sale because Spence owed $316.26 in taxes for 2021 and $66.08 for 2022 (totaling $382.34).[9] *See* R.R. at 15-17, 24-27; *see also* S.R.R. at 37. Spence pronounced that he did not have notice of the tax sale - either by mail or posting at the Property - before the sale took place; rather, he learned about the sale thereafter, when Belen's boyfriend Tony Sovinski (Sovinski) changed the locks at the Property. *See* R.R. at 10-11, 19, 21-24, 52, 54. However, he recalled:

> Q. Would you agree with me that in August of 2023 you spoke with the . . . Bureau about the tax sale?
>
> A. I believe I had a phone call, yes.
>
> . . . .
>
> Q. Did they call you?
>
> A. They called me.
>
> . . . .
>
> Q. And they told you about the tax sale, correct?
>
> A. No.
>
> Q. Did they tell you what you had to pay?

---

[9] Spence could not articulate why the Bureau's exhibits reflect that, at the time of the tax sale, he owed $10,787.00 in rubbish fees, school taxes, and city and county taxes. *See* R.R. at 15-17; *see also* S.R.R. at 37. However, "when a property owner is delinquent in paying taxes, an upset tax sale is conducted to recover the 'upset price,' which is the total sum of the taxes owed plus any tax liens and municipal claims[.]" *Weaver v. Schuylkill Cnty. Tax Claim Bureau*, 324 A.3d 711, 714-15 (Pa. Cmwlth. 2024) (quoting *In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018)).

Spence also acknowledged that the $20,000.00 tax sale purchase price, less the $10,787.00, left an approximate $9,200.00 balance owed to him, which is more than he would have if he had sold the Property for his original $17,000.00 purchase price less the $10,787.00. *See* R.R. at 27-28, 37-38.

7

A. I think so, yes.

Q. And what was the context of -- **what was your understanding of what they were telling you**?

A. **I don't remember. I can't remember. I don't have it down**.

Q. **Were they telling you that you owed taxes**?

A. I know I had to pay taxes, but **I don't recall the whole conversation. I don't recall. I don't remember**.

Q. Did you perceive that it was an important event that you should remember?

A. Absolutely.

Q. But you don't remember what they said about taxes?

A. I don't remember.

Q. **What do you remember about the call**?

A. I don't remember. Just getting a call, talking to a lady, and she said something about taxes. I said okay. **Honestly**[,] **I don't remember the conversation**.

R.R. at 22-23 (emphasis added).

Spence explained that he was assaulted in 2015 or 2016 and suffered injuries for which he continues to be hospitalized on and off (including one month in 2023 and again in 2024). *See* R.R. at 7-9. Although his injuries included brain damage that has resulted in ongoing memory problems, he claimed that those memory difficulties would not affect his ability to remember whether he paid his Property taxes, whether the Bureau posted notice at the Property, or whether he was aware of the tax sale before it occurred.[10] *See* R.R. at 8-9, 13, 18. Spence asserted that he was prepared to pay all of the Property's delinquent taxes. *See* R.R. at 25.

---

[10] Spence denied telling Sovinski that he knew about the tax sale, but had forgotten about it. *See* R.R. at 20-22.

The Bureau's upset tax sale coordinator Janine Heinlein (Heinlein) testified that she is responsible for maintaining the County's property ownership list and providing the requisite tax sale notices under the RETSL, and she controlled the file for the tax sale of Spence's Property in September 2023. *See* R.R. at 29-30. She recalled that the Bureau mailed a notice of return and claim to Spence at his record mailing address at the Property, but it was returned to the Bureau. *See* R.R. at 30-31. Heinlein detailed that the County's sheriff posted the notice of return and claim (i.e., notice that a tax claim has been made against the Property) on November 23, 2022, at 3:40 p.m., that represented if the delinquent taxes were paid by July 1, 2023, or thereafter, but before the tax sale, the Property would not be sold at an upset tax sale. *See* R.R. at 31-33, 38.

Heinlein stated that the Bureau sent a July 7, 2023 notice of tax sale by certified mailing with restricted delivery to Spence at the Property, but it was also returned marked *refused* and *VAC*, which she understood to mean *vacant*. *See* R.R. at 33, 38-39; *see also* S.R.R. at 39-41. She further recalled that the sheriff posted notice of the tax sale at the Property on August 16, 2023, at 3:30 p.m. and notated on his affidavit that the Property was vacant. *See* R.R. at 33, 40; *see also* S.R.R. at 36. In addition, Heinlein recounted that the Bureau advertised the Property's tax sale in the Spirit newspaper on August 15, 2023, the Philadelphia Inquirer on August 17, 2023, and the Delaware County Legal Journal on August 18, 2023. *See* R.R. at 34, 40. She represented that, pursuant to the Bureau's protocol, Bureau delinquent tax office clerk Sandy Burk (Burk) called Spence on August 22, 2023, notified him of his tax delinquencies and that the Property was subject to tax sale, and notated on the upset sale contact sheet in the Bureau's file regarding that call. *See* R.R. at 40-44; *see also* S.R.R. at 35. Heinlein declared that the Bureau sent the 10-day notice of tax sale to Spence at the Property by first class mail on August 25, 2023, and it was not returned to the Bureau. *See* R.R. at 33, 39; *see also* S.R.R. at 42-43.

Burk testified that, as a matter of course, she called Spence on August 22, 2023, informed him that he owed $382.32 in 2021 and 2022 taxes on the Property and if he did not pay those taxes, the Property would be sold at a September 23, 2023 tax sale. *See* R.R. at 49-51. She noted on the upset sale contact sheet that Spence intended to pay those taxes by August 31, 2023. *See* S.R.R. at 35, 45. She declared that, although her notation does not specify that she told Spence about the upcoming tax sale, that was the point of her call and how she begins all of her conversations with delinquent taxpayers whose properties are subject to tax sales. *See* R.R. at 50-51. The trial court admitted the Bureau's documents, including the Bureau's proofs of mailings, posting, and publication, into evidence without objection. *See* R.R. at 55; *see also* S.R.R. at 29-46.

Sovinski testified that he and Belen met with Spence after the tax sale in an attempt to "settle this matter[,]" R.R. at 52, and Spence expressed that he knew he owed taxes on the Property because he had spoken to the Bureau, and then went on to discuss the injuries he sustained during the assault. *See* S.R.R. at 52. He recalled Spence stating that he was supposed to pay the taxes before the tax sale, but "forgot he had to pay." R.R. at 53. He added that Spence wished to speak to an attorney and Spence thereafter filed the Petition. *See* S.R.R. at 53. Sovinski confirmed that he and Spence's counsel discussed the Property before the tax sale:

> Q. . . . **[Y]ou and I spoke about my client's [P]roperty**, and so forth, right?
>
> A. Prior to the sale?
>
> Q. **Prior to the sale**.
>
> A. **Yes**.
>
> Q. And you said that your girlfriend really wanted this property, correct?
>
> A. She wanted to fight and defend it.

10

R.R. at 54 (emphasis added).

> In tax sale cases,
>
> > [t]he law is well established that "[t]he trial court is the finder of fact and 'has exclusive authority to weigh the evidence, make credibility determinations[,] and draw reasonable inferences from the evidence presented.'" *In re Monroe Cnty. Tax Claim Bureau*, 91 A.3d 265, 269 n.6 (Pa. Cmwlth. 2014) (quoting *In re: Sale of Real Est. by Lackawanna Cnty. Tax Claim Bureau (Appeal of Yankowski)*, 986 A.2d 213, 216 (Pa. Cmwlth. 2009)).

*Severino v. J.P. Holdings, LLC*, 303 A.3d 540, 544 (Pa. Cmwlth. 2023). "Where the trial court's findings are supported by substantial evidence of record, this Court may not disturb those findings on appeal." *Weaver v. Schuylkill Cnty. Tax Claim Bureau*, 324 A.3d 711, 714 n.4 (Pa. Cmwlth. 2024).

Here, the trial court summarized the evidence, declared Heinlein's and Burk's testimony credible, concluded that the Bureau complied with the RETSL, and denied the Petition. *See* Trial Ct. May 22, 2024 Order (R.R. at 1); *see also* R.R. at 60. The trial court reasoned:

> [Spence's] Property was sold on September 21, 2023. Under the facts of this case, the . . . Bureau complied with the requirements of the [RETSL] by sending notice to [Spence], posting the [P]roperty for [tax] sale, and advertising the [tax] sale. This [trial] court found [] Heinlein's testimony regarding notice to be credible. The evidence presented to this [trial] court established that notice was given more than [30] days of the scheduled sale, satisfying [Section 602(a) of the RETSL]. The evidence further established that the . . . Bureau notified [Spence] by certified restricted mail to the last known address in July of 2023, which was more than 30 days prior to the [tax] sale. The . . . Bureau also mailed an additional final 10-day notice of the [tax] sale to the last known address of [Spence]. The [P]roperty was also posted. These efforts satisfied [Section 602(e) of the RETSL].

> Accordingly, th[e trial] court submits that the tax sale in this case should not have been set aside. *See* [Section 601(h) of the RETSL,] 72 P.S. § 5860.602(h) ([n]o sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section.").

Trial Ct. Op. at 5-6 (R.R. at 62-63).

The undisputed record evidence supports that the Bureau posted and published notice of the tax sale as required by Section 602(a) and (e)(3) of the RETSL, sent the 30-day notice of the tax sale to Spence at the address in the Bureau's and the County's tax records since 2014 (i.e., the Property)[11] as mandated by Section 602(e)(1) of the RETSL and, as Section 602(e)(2) of the RETSL commands, after the certified mailing was returned, the Bureau sent the notice by first-class mail to the Property (Spence claimed to visit every few days to collect) that was not returned. Accordingly, substantial record evidence supported the trial court's conclusion that the Bureau met its burden of proving that it provided Spence all statutorily required notice in accordance with the RETSL. Notwithstanding, in an effort to make every possible reasonable attempt to ensure that Spence had notice in addition to the

---

[11] Although Spence did not correct the Bureau's or the County's records to ensure that he received tax notices where he resides, this Court has clarified:

> In reviewing the validity of a tax sale, the court must focus "not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [tax claim bureau] comply with the requirements of the [RETSL]." [*Appeal of Neff*], 132 A.3d [at] 644 . . . (quoting *Smith v. Tax Claim Bureau of Pike C[nty.]*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003)). It is the conduct of the tax claim bureau that is determinative of compliance with the statutory notice provisions. *Steinbacher* [*v. Northumberland Cnty. Tax Claim Bureau*], 996 A.2d [1095,] 1099 [(Pa. Cmwlth. 2010)]. Moreover, a property owner does not possess a legal duty to provide a tax claim bureau with a change of address.

*George v. Del. Cnty. Tax Claim Bureau*, 323 A.3d 106, 113 (Pa. Cmwlth. 2024). Thus, Spence's failure to change or update his address for tax mailings "was of no moment." *Id.*

12

successful first-class mailing, the Bureau called and personally notified Spence of his delinquency and the upcoming tax sale. Because the trial court's conclusion was based on findings clearly supported by substantial record evidence, it did not err by ruling that the Bureau met its burden of proving that it complied with the RETSL's mandated notice provisions and notified Spence of the September 21, 2023 tax sale of his Property.

Based on the foregoing, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Spence,               :
        Appellant     :
                  :
      v.              :
                  :  No. 829 C.D. 2024
Tax Claim Bureau of Delaware County  :

## O R D E R

AND NOW, this 27th day of June, 2025, the Delaware County Common Pleas Court's May 22, 2024 order (docketed on May 24, 2024) is affirmed.

_____
ANNE E. COVEY, Judge